UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CITY OF GASTONIA,<br>*a North Carolina municipal corporation*,<br><br>Plaintiff<br><br>vs.<br><br>NC GAS HOUSE GANG LLC,<br>*a Wyoming limited liability company*,<br><br>Defendant. | **DEFENDANT NC GAS HOUSE GANG LLC'S ANSWER WITH COUNTERCLAIMS**<br><br>Case No. 3:23-cv-00892-RJC-SCR<br><br>*Jury Trial Demanded* |

COMES NOW Defendant NC Gas House Gang LLC ("NC Gas House Gang"), by and through its attorneys at The Fuller Law Firm, P.C., in response to the allegations contained in Plaintiff City of Gastonia's Complaint, and submits this Answer with Counterclaims, upon information and belief, as follows:

### INTRODUCTION

The people of the City of Gastonia (the "City") deserve better than for their government to conspire with one business enterprise to deprive another business enterprise of its livelihood through coercive and predatory behavior. When the City decided to confederate with the Atlantic League of Professional Baseball, Inc. (the "League") to carry out a scheme to seize and commandeer NC Gas House Gang LLC's ("NC Gas House Gang") ownership of the Gastonia Honey Hunters professional baseball team, the City committed itself to an abusive and unlawful pattern of conduct that has resulted in the deprivation of property. In furtherance of this unholy confederation with the League, the City took the extraordinary step of physically changing the

locks at the stadium known as "FUSE Stadium" or "CaroMont Health Park," and seized NC Gas House Gang's possessory lease interest in the facility.

What began with a laudable goal to revitalize a blighted and nearly forgotten area along West Franklin Boulevard, now known as the Franklin Urban Sports and Entertainment (FUSE) District, has turned into the City being involved in the taking of a $3 million professional baseball franchise and in locking out NC Gas House Gang from stadium. In a foolish effort to deflect blame and save face, the City has compounded this ignominy by orchestrating a well-coordinated public relations assault to obscure its true motivations, including the filing of this shameless lawsuit. Because the City has been obsessed with justifying its participation in the economic development project – of which the baseball team and the construction and use of the stadium are a part – in the face of public opposition, the City has lost its way. Indeed, the City's conduct, as set forth more fully herein, precipitated a cascade of events that ultimately drove NC Gas House Gang into bankruptcy.

This Answer, and the Counterclaims that accompany it, represents Defendant NC Gas House Gang LLC's effort to set the record straight, to defend its name, and to hold the City to account for its behavior.

## ANSWER TO COMPLAINT

1. NC Gas House Gang denies the allegations contained in Paragraphs 6, 7, 16, 17, 18, 19, 22, 23, 24, 30, 31, 32, 33, 34, 37, 41, 47, 48, 49, 50, 51, 52, 54, 55, 57, 58, 59, 60, 61, 62, 63, 64, 65, 67, 68, 69, 70, 71, 72, 73, 74, 76, 77, 78, and 79 of the Complaint.

2. NC Gas House Gang denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraphs 35, 38, 39, 40, 53, and 56 of the Complaint.

3. NC Gas House Gang admits Paragraphs 1, 3, 4, 11, 12, 13, 14, 15, 66, and 75 of the Complaint.

4. NC Gas House Gang opposes Plaintiff's motion for a preliminary injunction.

5. With respect to Paragraph 2 of the Complaint, NC Gas House Gang admits that it is a limited liability company incorporated in the State of Wyoming, and that it is domiciled in the State of Maryland.

6. With respect to Paragraph 5 of the Complaint, NC Gas House Gang admits that it and Plaintiff entered into an Exclusive Use Area Lease Agreement and a Use and Operating Agreement in June 2020, but denies the remainder of Paragraph 5.

7. With respect to Paragraph 8 of the Complaint, NC Gas House Gang admits that this Court has subject matter jurisdiction over this action.

8. With respect to Paragraph 9 of the Complaint, NC Gas House Gang admits that this Court has personal jurisdiction over the parties in this action.

9. With respect to Paragraph 10 of the Complaint, NC Gas House Gang admits that this Court is the appropriate venue for this action.

10. With respect to Paragraphs 20, 21, 27, 29, 36, 42, 43, 44, 45, and 46 of the Complaint, the relevant agreements speak for themselves, and Plaintiff's allegations characterizing the provisions of the agreements are, therefore, denied.

11. With respect to Paragraph 25 of the Complaint, although it is admitted that Atlantic League purported to terminate NC Gas House Gang's team membership, it is denied that such purported termination was proper or effective.

12. With respect to Paragraph 28 of the Complaint, although it is admitted that Plaintiff purported to issue a so-called "Final Notice" on November 15, 2023, it is denied that such purported "Notice" was proper or effective.

13. NC Gas House Gang denies all the prayers for relief contained in "Wherefore" clauses 1, 2, 3, 4, 5, 6, and 7 of the Complaint.

14. Any and all allegations, contentions, or prayers for relief that are not specifically herein admitted are hereby expressly denied.

## FIRST AFFIRMATIVE DEFENSE

Plaintiff is not entitled to injunctive or equitable relief because it has unclean hands.

## SECOND AFFIRMATIVE DEFENSE

The Complaint is barred because Plaintiff is equitably estoppel from pursuing its claims because of its unlawful conduct.

## THIRD AFFIRMATIVE DEFENSE

The Complaint is barred because Plaintiff has engaged in conduct that has entirely frustrated NC Gas House Gang's performance under the EUALA and the UOA.

## FOURTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, because Plaintiff's claimed injuries and damages were caused, if at all, by the unauthorized, illegal, and/or ultra vires conduct and acts, contrary to law, of the Atlantic League of Professional Baseball, Inc., and/or other third parties.

## FIFTH AFFIRMATIVE DEFENSE

While expressly denying any wrongdoing, if and to the extent Defendant breached any agreements, Defendant is entitled to an equitable setoff in the damages awarded to account for any

-4-
Case 3:23-cv-00892-RJC-SCR   Document 5   Filed 01/22/24   Page 4 of 16

benefits that have accrued to Plaintiff because of Defendant's tenure as a tenant and other amounts to which Defendant is entitled to be set-off pursuant to the terms of any such agreements.

## SIXTH AFFIRMATIVE DEFENSE

Defendant hereby gives notice that it intends to rely upon such other defenses as may become available or appear during discovery in this case or otherwise, and hereby reserves the right to amend this Answer to assert any such defenses.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred, in whole or in part, by Plaintiff's failure to mitigate damages.

## EIGHTH AFFIRMATIVE DEFENSE

By locking Defendant out of the stadium and refusing Defendant its possessory lease rights, Defendant has anticipatorily breached the EUALA and UOA agreements.

## NINTH AFFIRMATIVE DEFENSE

The Complaint is barred, in that Plaintiff's conduct herein constitutes an unlawful deprivation or taking of property without due process of law, in violation of the Fifth Amendment to the United States Constitution.

## TENTH AFFIRMATIVE DEFENSE

The Complaint is barred because Plaintiff has acted in bad faith and has breached its implied duty of good faith and fair dealing with respect to the EUALA and UOA.

*****

# COUNTERCLAIMS AGAINST PLAINTIFF

COMES NOW Defendant NC Gas House Gang LLC, by and through undersigned counsel, for its counterclaims against Plaintiff City of Gastonia, states as follows, upon information and belief:

## JURISDICTION AND VENUE

1. This Court has personal and subject matter jurisdiction over the parties and the counterclaims, under Rule 13 of the Federal Rules of Civil Procedure and on the same basis as for the claims in the Complaint.

2. Venue is proper in this judicial district under 28 U.S.C. § 1391 and on the same basis as for the claims in the Complaint.

## FACTUAL BACKGROUND

3. In or about 2017, Plaintiff determined to address the blight and disinvestment on the west side of the city along Franklin Boulevard through reinvestment and economic development. It created a district known as the Franklin Urban Sprots and Entertainment, or FUSE, District.

4. The operating theory behind the FUSE District was that reinvestment and economic development would take place if Plaintiff would catalyze this by building a sports and entertainment facility that would host a minor league professional baseball team and host other entertainment events.

5. Plaintiff faced immediate and sustained opposition to its economic development plan, but persisted, nevertheless.

6. Plaintiff issued a request for proposals (RFP) to develop the district, but in response thereto, no suitable applicants were selected. Plaintiff continued unsuccessfully to identify a developer and potential team.

7. After these failures, the Atlantic League of Professional Baseball, Inc., responded to a bid, promising to locate a baseball franchise in Gastonia to be located at the soon-to-be-constructed stadium.

8. The League, through one of its members, won the bid.

9. Shortly thereafter, the League, through this same member, determined that it did not want to pursue its winning bid after all because the market for baseball in Gastonia was too small, and because the League concluded that it would be very difficult to make a baseball team profitable.

10. As such, the League informed Plaintiff that it was backing away from the deal. In its retreat, the League promised to help Plaintiff find a willing buyer for a baseball franchise to play in the stadium, which was already under construction.

11. Without the League's help, Plaintiff was left without a team to play in the stadium once it was completed. This caused great consternation.

12. The League introduced several potential developers and buyers to Plaintiff, but each of them ultimately declined to participate.

13. In the meantime, Brandon Bellamy, owner of The Velocity Companies, a real estate development company, learned of the potential opportunity in Gastonia.

14. Mr. Bellamy's and Velocity's expertise was in redeveloping and revitalizing blighted neighborhoods, especially those located in disadvantaged communities.

15. Mr. Bellamy became interested in the project, though he did not have experience owning or operating a sports team. But the League and Plaintiff knew this from the beginning and accepted it.

16. After much courting, Mr. Bellamy agreed to participate in the development project and agreed to bring about the purchase of a membership in the League, and paid the $3 million franchise fee.

17. On or about June 23, 2020, NC Gas House Gang entered into an Economic Development Agreement ("EDA") under N.C. Gen. Stat. § 158-7.1, along with the EUALA and the UOA.

18. Key to these three agreements was NC Gas House Gang's membership in the League and its lease of the stadium.

19. Also part of the EDA was the development of certain parcels meant to catalyze other development in the FUSE District.

20. By virtue of these agreements, NC Gas House Gang endeavored to pursue a multi-pronged business strategy involving (1) operation of the baseball team, (2) recruitment of entertainment events to be held in the stadium, (3) venue rentals, and (4) real estate development in the parcels surrounding the stadium. Ownership and operation of the baseball team and control of the stadium were foundational to the strategy.

21. Plaintiff and the League were relieved to have NC Gas House Gang enter the picture because of their previous failures to secure other prospective team owners or developers.

22. In their anxiety, Plaintiff and the League pushed NC Gas House Gang to have the new baseball team ready to begin play when the stadium construction was finished, in only nine months. Ordinarily, it takes 18 months to lift a new team off the ground.

23. Significantly, the beginning of the EDA in June 2020 coincided with the outbreak of the COVID-19 pandemic, during which most businesses were locked down.

24. Eventually, stadium construction was completed, and the stadium opened in 2021. Miraculously, NC Gas House Gang was able to field a team to commence play.

25. Predictably, though, the team struggled during the 2021 season, which was expected, and NC Gas House Gang experienced financial losses.

26. Key organizational investments in the team by NC Gas House Gang led to success on the baseball field during the 2022 season. Nevertheless, financial losses continued.

27. During the third year (the 2023 season), while the team's success on the field continued and expanded, financial losses began to overcome operations.

28. It was at this time that Plaintiff and the League pre-emptively decided that NC Gas House Gang was not going to make it, and that they were going to take matters into their own hands, without involving NC Gas House Gang.

29. Unbeknownst to NC Gas House Gang, Plaintiff and the League devised a scheme to take the ownership of the team and membership in the League from NC Gas House Gang, and to manufacture termination of the 20-year EUALA and UOA.

30. Plaintiff's and the League's scheme involved enticing someone else to purchase the team membership, without compensating NC Gas House Gang.

31. In furtherance of this scheme, Richard "Rick" White, the president of the League, began to interfere with NC Gas House Gang's relationships with vendors, began an effort to poach NC Gas House Gang's employees, to defame NC Gas House Gang, and otherwise to destroy NC Gas House Gang's business.

32. Recognizing the precariousness of its financial condition, NC Gas House Gang engaged its resourcefulness to accomplish two things: first, NC Gas House Gang was able to secure an angel investor to put just under $1 million into an escrow account to cover the indebtedness NC Gas House Gang had accumulated; and second, NC Gas House Gang was able to secure two prospective buyers who issued Letters of Intent to purchase the baseball team for $4 million.

33. Plaintiff and the League flatly rejected NC Gas House Gang's efforts to address its financial difficulties. Indeed, NC Gas House Gang had succeeded in producing a solution that would address its financial concerns.

34. But because Plaintiff and the League had embarked on their scheme, they were determined to see it through.

35. Accordingly, Plaintiff and the League coordinated their moves to take the team and lock NC Gas House Gang out of the stadium.

36. Plaintiff and the League moved with lethal swiftness to reject NC Gas House Gang's proffer of the angel investor's nearly $1 million funds in escrow, then rejected NC Gas House Gang's proffer of a prospective purchaser ready and willing to buy NC Gas House Gang's ownership of the team for bogus and pretextual reasons as of October 29, 2023, then the League summarily terminated NC Gas House Gang's team membership upon only 24 hours' notice on November 13, 2023, followed by Plaintiff's purported "Final Notice" terminating the EUALA and UOA on November 15, 2023, then Plaintiff's filing of this action in state court on November 17, 2023, culminating in Plaintiff's extraordinary act to change the locks on the stadium, locking out NC Gas House Gang's from its possessory lease interest in the stadium on December 5, 2023.

37. By Plaintiff's and the League's actions, NC Gas House Gang's ownership of the baseball team and its lease of the stadium were effectively seized without compensation.

38. Bewildered by the ruthlessness of Plaintiff's and the League's moves, NC Gas House Gang was driven into bankruptcy.

39. On January 8, 2024, Plaintiff purported to issue a "Notice" of default of the EUALA and UOA based upon NC Gas House Gang's petition for protection under the United States Bankruptcy Code, even though Plaintiff knew that the United States Bankruptcy Court for the District of Maryland has not released jurisdiction over the bankruptcy estate, which includes the EUALA and UOA. In other words, the EUALA and the UOA remain an unexpired lease under the jurisdiction of the bankruptcy court, notwithstanding the pendency of this litigation.

## COUNT I
*[Breach of the Duty of Good Faith and Fair Dealing]*

40. NC Gas House Gang repeats and re-alleges Paragraphs 1 through 39 of these Counterclaims, as if fully set forth and incorporated herein.

41. The EDA, EUALA, and UOA are enforceable contracts. In particular, the EDA is authorized under N.C. Gen. Stat. § 158-7.1.

42. Plaintiff has waived any claim to governmental immunity.

43. Within the EDA, EUALA and UOA there is an implied duty of good faith and fair dealing that neither party will do anything that injures the right of the other to receive the benefits of each of these agreements.

44. Plaintiff had a duty to honor these agreements in good faith.

45. As a consequence of the conduct set forth hereinabove, Plaintiff has breached its duty of good faith and fair dealing, *inter alia*, by conspiring with the League to effect a taking of NC Gas House Gang's property interest in its membership in the League, and by orchestrating a lock out of NC Gas House Gang from its possessory lease interest in the stadium.

46. In so doing, Plaintiff has acted in bad faith and has deprived NC Gas House Gang of its bargain under the EDA, in that the premise of the agreement relied upon ownership of the baseball team and the lease of the stadium.

47. Further, Plaintiff's conduct was willful and wanton, and evinced a reckless disregard for the rights of NC Gas House Gang.

48. NC Gas House Gang has been harmed by Plaintiff's breach of its duty of good faith and fair dealing, and Plaintiff is liable for damages in an amount to be determined at trial exceeding $75,000.

## COUNT II
*[Breach of Contract by Repudiation]*

49. NC Gas House Gang repeats and re-alleges Paragraphs 1 through 48 of these Counterclaims, as if fully set forth and incorporated herein.

50. The EDA is a valid contract capable of being enforced.

51. The essence of the bargain contained in the EDA is NC Gas House Gang's ownership of the baseball team and its lease of the stadium.

52. Plaintiff's conduct in bringing about the termination of NC Gas House Gang's ownership of the baseball team, through its confederation with the League, constituted Plaintiff's declaration that it had no intention to perform its obligations under the EDA. Moreover, Plaintiff's conduct in locking NC Gas House Gang out of the stadium constituted Plaintiff's unmistakable expression of intent not to perform its obligations under the EDA.

53. At the time of Plaintiff's repudiation of the EDA, NC Gas House Gang was performing its obligations under the contract as agreed.

54. As a direct and proximate result of Plaintiff's breach of contract by repudiation, NC Gas House Gang was harmed and has suffered damages in an amount exceeding $75,000, for which Plaintiff is liable under law.

## COUNT III
*[Unfair and Deceptive Trade Practices]*

55. NC Gas House Gang repeats and re-alleges Paragraphs 1 through 54 of these Counterclaims, as if fully set forth and incorporated herein.

56. At all times relevant herein, Plaintiff was engaged in acts and practices that were in and affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1.

57. Plaintiff's acts and practices, as alleged herein, constitute unfair and deceptive acts and practices pursuant to N.C. Gen. Stat. § 75-1.1.

58. Such acts and practices are in or affecting commerce in North Carolina, are unethical, oppressive, and unscrupulous.

59. Plaintiff's acts and practices were done willfully and wantonly or in reckless disregard of NC Gas House Gang's rights, are contrary to the public policy of North Carolina, were substantially injurious to North Carolina, and constitute unfair and deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.

**60.** As a result of Plaintiff's unfair and deceptive practices, NC Gas House Gang has suffered actual injury in an amount exceeding $75,000.00, for which Plaintiff is liable, together with treble damages, punitive damages, attorneys' fees, and the costs and disbursements of this action.

## COUNT IV
### *[Tortious Interference with Contracts]*

61. NC Gas House Gang repeats and re-alleges Paragraphs 1 through 60 of these Counterclaims, as if fully set forth and incorporated herein.

62. A valid contract existed between NC Gas House Gang and the League with respect to ownership of the baseball team.

63. Valid contracts also existed between NC Gas House Gang and various producers of entertainment events which were (and are) scheduled to be held in the stadium facility, including persons paying for venue rentals.

64. Plaintiff knew of all of these contracts with the League and with the entertainment producers and venue renters.

65. Yet Plaintiff, through its conduct as set forth herein, acted intentionally to induce the League not to perform its contract and to terminate NC Gas House Gang's membership. Moreover, Plaintiff acted intentionally to prevent and preclude performance of NC Gas House Gang's contracts with the entertainment producers and venue renters.

66. In so doing, Plaintiff acted without justification.

67. Further, Plaintiff's conduct was aggravated by willfulness and wantonness or a reckless disregard for NC Gas House Gang's rights.

68. As a consequence of Plaintiff's tortious interference with these contracts, NC Gas House Gang was injured thereby, and Plaintiff is liable therefor in compensatory damages in an amount exceeding $75,000, together with punitive damages and the costs and disbursements of this action.

WHEREFORE, Defendant NC Gas House Gang LLC prays for judgment in its favor and against Plaintiff on each and every count of these Counterclaims, and seeks the following relief:

1. Judgment dismissing the Complaint with prejudice, such that Plaintiff have and recover nothing, and awarding to Defendant the costs and disbursements of this action;

2. Deny Plaintiff the relief sought in its Complaint;

3. To the extent allowed by law, tax the costs and disbursement of this action against Plaintiff;

4. An award for compensatory, consequential, and restitution damages in an amount to be determined at trial exceeding $75,000;

5. An award of reasonable attorneys' fees;

6. An award of punitive damages;

7. An award of pre- and post-judgment interest; and

8. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Under the Seventh Amendment to the United States Constitution, and pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant NC Gas House Gang LLC requests and trial by jury of all issues in this action.

Dated: January 22, 2024

Respectfully submitted,

s/ Trevor M. Fuller
N.C. Bar No. 27044
THE FULLER LAW FIRM, P.C.
5970 Fairview Road, Suite 450
Charlotte, North Carolina 28210
Telephone: (704) 659-5600
Email: tmfuller@thefullerlawfirm.com

*Attorneys for Defendant NC Gas House Gang LLC*

-15-
Case 3:23-cv-00892-RJC-SCR   Document 5   Filed 01/22/24   Page 15 of 16

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2024, I caused a true and correct copy of the foregoing Defendant NC Gas House Gang LLC's Answer with Counterclaims to be served via the Court's ECF/CM PACER electronic filing system, in accordance with the rules of this Court, upon:

>Daniel E. Peterson, Esquire
>Parker Poe Adams & Bernstein LLP
>620 South Tryon Street, Suite 800
>Charlotte, North Carolina 28202
>danielpeterson@parkerpoe.com
>
>*Attorneys for Plaintiff*

s/Trevor M. Fuller