UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| CITY OF GASTONIA,<br>*a North Carolina municipal corporation*,<br><br>          Plaintiff<br><br>vs.<br><br>NC GAS HOUSE GANG LLC,<br>*a Wyoming limited liability company*,<br><br>          Defendant.<br><br>NC GAS HOUSE GANG LLC,<br><br>          Defendant and Third-Party Plaintiff<br><br>vs.<br><br>ATLANTIC LEAGUE OF PROFESSIONAL BASEBALL, INC., and<br>RICHARD "RICK" WHITE<br><br>          Third-Party Defendants. | Case No. 3:23-cv-00892-RJC-SCR<br><br>**<u>DEFENDANT NC GAS HOUSE GANG LLC'S THIRD-PARTY COMPLAINT</u>**<br><br>*Jury Trial Demanded* |

      COMES NOW Defendant and Third-Party Plaintiff NC Gas House Gang LLC ("NC Gas House Gang"), by and through its attorneys at The Fuller Law Firm, P.C., as and for its Third-Party Complaint against Third-Party Defendants, in accordance with Rule 14 of the Federal Rules of Civil Procedure, hereby alleges the following, upon information and belief:

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over all claims in this action under 28 U.S.C. § 1332(a), in that there is diversity of citizenship among the parties and the matter in controversy exceeds $75,000.

2. Venue is proper in the Western District of North Carolina under 28 U.S.C. § 1391, in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

3. Defendant and Third-Party Plaintiff NC Gas House Gang LLC is a limited liability company incorporated in the State of Wyoming and domiciled in the State of Maryland.

4. Third-Party Defendant Atlantic League of Professional Baseball, Inc. (the "League"), is a Pennsylvania foreign corporation transacting business in North Carolina. However, the League has not obtained a certificate of authority (and is not authorized) to do business in North Carolina pursuant to N.C. Gen. Stat. § 55-15-01(a).

5. Third-Party Defendant Richard E. "Rick" White resides in the State of New York.

## FACTUAL BACKGROUND

6. In or about 2017, the City of Gastonia, North Carolina, determined to address the blight and disinvestment on the west side of the city along Franklin Boulevard through reinvestment and economic development. It created a district known as the Franklin Urban Sports and Entertainment, or FUSE, District.

7. The operating theory behind the FUSE District was that reinvestment and economic development would take place if the City would catalyze this by building a sports and

entertainment facility that would host a minor league professional baseball team and other entertainment events.

8. The City faced immediate and sustained opposition to its economic development plan, but persisted, nevertheless.

9. The City issued a request for proposals (RFP) to develop the district, specifically, for a manager of the stadium and to bring a professional baseball team. But in response thereto, no suitable applicants were selected. The City continued unsuccessfully to identify a developer and potential team.

10. After these failures, on or about August 20, 2019, the League – through Third-Party Defendant White and the League's board chairman Frank Boulton – was brought forward and recommended to the Gastonia City Council as a manager for the soon-to-be-constructed stadium, with the League promising to locate a baseball franchise in Gastonia.

11. Shortly thereafter, the League determined that it did not want to pursue its winning bid after all because the market for baseball in Gastonia was too small, and because the League concluded that it would be very difficult to make a baseball team profitable.

12. As such, the League informed the City that it was backing away from the deal. In its retreat, the League promised to help the City find a willing buyer for a baseball franchise to play in the stadium, which was already under construction.

13. Without the League's help, the City was left without a team to play in the stadium once it was completed. This caused great consternation.

14. The League introduced several potential developers and buyers to the City, but each of them ultimately declined to participate.

15. In the meantime, Brandon Bellamy, owner of The Velocity Companies, a real estate development company, learned of the potential opportunity in Gastonia.

16. Mr. Bellamy's and Velocity's expertise was in redeveloping and revitalizing blighted neighborhoods, especially those located in disadvantaged communities.

17. Mr. Bellamy became interested in the project, though he did not have experience owning or operating a sports team. But the League and the City knew this from the beginning and accepted it.

18. After much courting, Mr. Bellamy agreed to participate in the development project and agreed to bring about the purchase of a membership in the League for a $3 million franchise fee.

19. On or about June 23, 2020, NC Gas House Gang and the City entered into an Economic Development Agreement ("EDA") under N.C. Gen. Stat. § 158-7.1, along with an Exclusive Use Area Lease Agreement ("EUALA") and a Use and Occupancy Agreement ("UOA").

20. Key to these three agreements was NC Gas House Gang's membership in the League and its lease of the stadium.

21. By virtue of these agreements, NC Gas House Gang endeavored to pursue a multi-pronged business strategy involving (1) operation of the baseball team, (2) recruitment of entertainment events to be held in the stadium, (3) venue rentals, and (4) real estate development in the parcels surrounding the stadium. Ownership and operation of the baseball team and control of the stadium were foundational to the strategy.

22. The League and the City were relieved to have NC Gas House Gang enter the picture because of their previous failures to secure other prospective team owners or developers.

23. In their anxiety, the League and the City pushed NC Gas House Gang to have the new baseball team ready to begin play when the stadium construction was finished, in only nine months. Ordinarily, it takes 18 months to lift a new team off the ground.

24. Significantly, the beginning of the EDA in June 2020 coincided with the outbreak of the COVID-19 pandemic, during which most businesses were locked down.

25. Not until September 21, 2021, did the League and NC Gas House Gang enter into the Atlantic League of Professional Baseball, Inc., League Affiliation Agreement (the "LAA"), whereby NC Gas House Gang formally became a member of the League.

26. Eventually, stadium construction was completed, and the stadium opened in 2021. Miraculously, NC Gas House Gang was able to field a team to commence play.

27. Predictably, though, the team struggled during the 2021 season, which was expected, and NC Gas House Gang experienced financial losses.

28. Key organizational investments in the team by NC Gas House Gang led to success on the baseball field during the 2022 season. Nevertheless, financial losses continued.

29. During the third year (the 2023 season), while the team's success on the field continued and expanded, financial losses began to overcome operations.

30. In or about May 2023, the League and the City pre-emptively decided that NC Gas House Gang was not going to make it, and that they were going to take matters into their own hands.

31. At some point, unbeknownst to NC Gas House Gang, the League and the City devised a scheme to take the ownership of the team and membership in the League from NC Gas House Gang, and to manufacture termination of the 20-year EUALA and UOA.

32. The League's and the City's scheme involved enticing someone else to purchase the team membership, without compensating NC Gas House Gang.

33. In furtherance of this scheme, Third-Party Defendant White, who was the president of the League, began to interfere with NC Gas House Gang's relationships with vendors, began an effort to poach NC Gas House Gang's employees, defamed NC Gas House Gang by telling vendors that the company was no good, and otherwise engaged in efforts to destroy NC Gas House Gang's business.

34. Meanwhile, recognizing the precariousness of its financial condition, NC Gas House Gang engaged its resourcefulness to secure an angel investor to put just under $1 million into an escrow account to cover the indebtedness NC Gas House Gang had accumulated. In addition, NC Gas House Gang sought prospective buyers who would purchase the baseball team.

35. On October 18, 2023, Zawyer Sports, LLC, issued a Letter of Intent offering to purchase the team (and NC Gas House Gang's membership in the League) for a valuation of $3 million.

36. Shortly thereafter, on October 29, 2023, NC Gas House Gang secured a Letter of Intent from BCG Sports and Entertainment, LLC ("BCG Sports"), offering to purchase the team (and NC Gas House Gang's membership interest in the League) for $4 million.

37. NC Gas House Gang presented the BCG Sports offer to the League for approval.

38. By its efforts, NC Gas House Gang had succeeded in presenting a solution to its financial difficulties, and in securing a way forward for baseball to continue in the stadium.

39. But because the League and the City already had embarked on their scheme to deprive NC Gas House Gang of its ownership of the team and its lease of the stadium, they were determined to see it through.

40. As a consequence, the League flatly rejected NC Gas House Gang's proffer of the BCG Sports Letter of Intent, and frustrated and obstructed NC Gas House Gang's consummation of that deal. Further, the League disregarded the angel investor's nearly $1 million escrow funds.

41. The League and the City coordinated their moves to take the team and lock NC Gas House Gang out of the stadium, acting with lethal swiftness.

42. After rejection of the BCG Sports offer, on November 12, 2023, a Sunday, the League gave notice of a special meeting of its board of directors to take place the next day, November 13. At that special meeting, the League summarily terminated NC Gas House Gang's team membership under the LAA.

43. Two days later, on November 15, 2023, the City issued a "Final Notice" purporting to terminate the EUALA and UOA. But the City had never issued any other "notice" before this "final" notice.

44. Two days after that, on November 17, 2023, the City filed a lawsuit against NC Gas House Gang, seeking to obtain possession of the stadium. The City then took the extraordinary step of confiscating NC Gas House Gang's possessory lease interest in the stadium by changing the locks on the stadium on December 5, 2023.

45. By the League's and the City's actions, NC Gas House Gang's ownership of the baseball team and its lease of the stadium were effectively seized without compensation.

46. Bewildered by the ruthlessness of the League's and the City's moves, NC Gas House Gang was driven into bankruptcy.

47. In this action, NC Gas House Gang seeks relief from the League's nefarious conduct.

# COUNT I

## *[Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing]*

48. NC Gas House Gang repeats and re-alleges Paragraphs 1 through 47 of this Third-Party Complaint, as if fully set forth and incorporated herein.

49. The LAA is an enforceable contract between NC Gas House Gang and the League.

50. Within the LAA, there is an implied duty of good faith and fair dealing that neither party will do anything that injures the right of the other to receive the benefit of the agreement.

51. The League had a duty to honor the LAA in good faith.

52. As a consequence of the conduct set forth hereinabove – particularly the refusal of NC Gas House Gang's efforts to meet its financial obligations through the angel investor's escrow funds, and the obstruction and rejection of NC Gas House Gang's efforts to sell its team ownership – the League breached the LAA and the duty of good faith and fair dealing, including by, *inter alia*, frustrating NC Gas House Gang's performance of the agreement, effecting a taking of NC Gas House Gang's property interest in its membership in the League, and conspiring with the City to orchestrate a lockout of NC Gas House Gang from its possessory lease interest in the stadium.

53. In so doing, the League has acted in bad faith and has deprived NC Gas House Gang of its bargain under the LAA.

54. Further, the League's conduct was willful and wanton, and evinced a reckless disregard for the rights of NC Gas House Gang.

55. NC Gas House Gang has been harmed by the League's breach of contract and of its duty of good faith and fair dealing, such that the League is liable for compensatory, consequential, and restitution damages in an amount to be determined at trial exceeding $75,000.

## COUNT II

### *[Unfair and Deceptive Trade Practices]*

56. NC Gas House Gang repeats and re-alleges Paragraphs 1 through 55 of this Third-Party Complaint, as if fully set forth and incorporated herein.

57. At all times relevant herein, Third-Party Defendants were engaged in acts and practices that were in and affecting commerce within the meaning of N.C. Gen. Stat. § 75-1.1.

58. Third-Party Defendants' acts and practices, as alleged herein, constitute unfair and deceptive acts and practices pursuant to N.C. Gen. Stat. § 75-1.1.

59. Such acts and practices are in or affecting commerce in North Carolina, and are unethical, oppressive, and unscrupulous.

60. Third-Party Defendants' acts and practices were done willfully and wantonly or in reckless disregard of NC Gas House Gang's rights, are contrary to the public policy of North Carolina, were substantially injurious to North Carolina, and constitute unfair and deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1.

61. As a result of Third-Party Defendants' unfair and deceptive practices, NC Gas House Gang has suffered actual injury in an amount exceeding $75,000.00, for which Third-Party Defendants are liable, together with treble damages, punitive damages, attorneys' fees, and the costs and disbursements of this action.

## COUNT III

### *[Tortious Interference with Contracts]*

62. NC Gas House Gang repeats and re-alleges Paragraphs 1 through 61 of this Third-Party Complaint, as if fully set forth and incorporated herein.

63. Valid contracts existed between NC Gas House Gang and the City that relied upon NC Gas House Gang's team ownership, *i.e.*, the EDA, EUALA and UOA.

64. Valid contracts also existed between NC Gas House Gang and various vendors who provided services in connection with NC Gas House Gang's ownership and operation of the baseball team.

65. Third-Party Defendants knew of all of these contracts and their reliance upon NC Gas House Gang's ownership of the baseball team.

66. Yet Third-Party Defendants, through their conduct as set forth herein, acted intentionally to prevent and preclude performance (and caused non-performance) of these contracts by terminating NC Gas House Gang's team ownership.

67. In so doing, Third-Party Defendants acted without justification.

68. Further, Third-Party Defendants' conduct was aggravated by willfulness and wantonness or a reckless disregard for NC Gas House Gang's rights.

69. As a consequence of Third-Party Defendants' tortious interference with these contracts, NC Gas House Gang was injured thereby, and Third-Party Defendants are liable therefor in compensatory damages in an amount exceeding $75,000, together with punitive damages and the costs and disbursements of this action.

## COUNT IV

*[Tortious Interference with Prospective Business Relations]*

70. NC Gas House Gang repeats and re-alleges Paragraphs 1 through 69 of this Third-Party Complaint, as if fully set forth and incorporated herein.

71. Third-Party Defendants interfered with NC Gas House Gang's prospective business relationship with BCG Sports by maliciously inducing BCG Sports not enter into a contract with NC Gas House Gang to purchase the baseball team, pursuant to the Letter of Intent issued on

October 29, 2023, in that BCG Sports would have entered into such contract but for the interference of Third-Party Defendants.

72. Further, Third-Party Defendants' interference was aggravated by willfulness and wantonness or a reckless disregard for NC Gas House Gang's rights.

73. As a direct and proximate consequence of Third-Party Defendants' tortious interference with the prospective business relationship, NC Gas House Gang was injured thereby, and Third-Party Defendants are liable therefor in compensatory damages in an amount exceeding $75,000, together with punitive damages and the costs and disbursements of this action.

WHEREFORE, Defendant and Third-Party Plaintiff NC Gas House Gang LLC prays for judgment in its favor and against Third-Party Defendants on each and every count of the Third-Party Complaint, and seeks the following relief:

1. An award of compensatory, consequential, and restitution damages in an amount to be determined at trial exceeding $75,000;

2. An award of reasonable attorneys' fees;

3. An award of statutory and treble damages;

4. An award of punitive damages;

5. To the extent allowed by law, tax the costs and disbursement of this action against Third-Party Defendants;

6. An award of pre- and post-judgment interest; and

7. Such other and further relief as the Court may deem just and proper.

//
//
//

**JURY DEMAND**

Under the Seventh Amendment to the United States Constitution, and pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant and Third-Party Plaintiff NC Gas House Gang LLC requests a trial by jury of all issues in this action.

Dated: February 5, 2024

Respectfully submitted,

s/ Trevor M. Fuller
N.C. Bar No. 27044
THE FULLER LAW FIRM, P.C.
5970 Fairview Road, Suite 450
Charlotte, North Carolina 28210
Telephone: (704) 659-5600
Email: tmfuller@thefullerlawfirm.com

*Attorneys for Defendant and Third-Party Plaintiff
NC Gas House Gang LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2024, I caused a true and correct copy of the foregoing Defendant NC Gas House Gang LLC's Third-Party Complaint to be served via the Court's ECF/CM PACER electronic filing system, in accordance with the rules of this Court, upon:

>Daniel E. Peterson, Esquire
>Parker Poe Adams & Bernstein LLP
>620 South Tryon Street, Suite 800
>Charlotte, North Carolina 28202
>danielpeterson@parkerpoe.com
>
>L. Ashley Smith, City Attorney
>P.O. Box 1748
>Gastonia, North Carolina 28053-1748
>ash.smith@gastonianc.gov
>
>*Attorneys for Plaintiff City of Gastonia*

s/Trevor M. Fuller