# EXHIBIT 1

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 23-18766-LSS |
| | ) | Chapter 11 |
| NC GAS HOUSE GANG LLC, | ) | |
| | ) | 6500 Cherrywood Lane |
| | ) | Greenbelt, Maryland 20770 |
| | ) | |
| | ) | February 23, 2024 |
| Debtor. | ) | 10:33 a.m. |

TRANSCRIPT OF ORAL RULING RE (100) MOTION TO VACATE FILED BY DEBTOR NC GAS HOUSE GANG LLC;(114)(132) RESPONSE ON BEHALF OF NC GAS HOUSE GANG LLC FILED BY RONALD J. DRESCHER
BEFORE THE HONORABLE LORI S. SIMPSON
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES VIA VIDEO:

| | |
|---|---|
| For NC Gas House Gang LLC: | Law Office of Ronald J. Drescher<br>By: RONALD J. DRESCHER, ESQ.<br>10999 Red Run Boulevard, PMB 224<br>Suite 205<br>Owings Mills, MD 21117 |
| For Marc E. Albert, Subchapter V Trustee: | Stinson LLP<br>By: MARC E. ALBERT, ESQ.<br>1775 Pennsylvania Ave., NW<br>Suite 800<br>Washington, DC 20006 |
| For the U.S. Trustee’s Office: | U.S. Trustee’s Office<br>By: LISA Y. STEVENS, ESQ.<br>6305 Ivy Lane, Suite 600<br>Greenbelt, MD 20770 |
| Operator: | Gloria Bellman, Courtroom Deputy to the Honorable Lori S. Simpson |
| TRANSCRIPTION SERVICE: | TRANSCRIPTS PLUS, INC.<br>435 Riverview Circle<br>New Hope, Pennsylvania 18938<br>Telephone: 215-862-1115<br>e-mail CourtTranscripts@aol.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES VIA VIDEO:
(continued)

| | |
|---|---|
| For the Atlantic League of Professional Baseball: | McNees Wallace & Nurick<br>By: RICK M. GRAMS, ESQ.<br>600 Washington Avenue<br>Suite 300<br>Towson, MD 21204 |
| For City of Gastonia, a North Carolina Municipal Corporation: | Whiteford Taylor & Preston, L.L.P.<br>By: DAVID W. GAFFEY, ESQ.<br>7 St Paul Street, Suite 1900<br>Baltimore, MD 21202 |
| | Parker Poe Adams & Bernstein LLP<br>By: ASHLEY A. EDWARDS, ESQ.<br>620 South Tryon Street<br>Suite 800<br>Charlotte, NC 28202 |

COURTROOM DEPUTY: Silence please and come to order. The United States Bankruptcy Court for the District of Maryland is now in session. The Honorable Lori S. Simpson presiding over this video conference hearing.

On the 10:30 docket, the case of NC Gas House Gang LLC, Case Number 23-18766.

Would the parties identify yourself for the record, starting with debtor's counsel? Let's start with debtor's counsel, followed by the Sub V Trustee, then U.S. Trustee, and then any other parties that would like to announce themselves on the record.

MR. DRESCHER: Thank you; good morning. Ronald Drescher appearing on behalf of the debtor, NC Gas House Gang LLC.

THE COURT: Good morning.

MR. ALBERT: Good morning. Marc Albert, Subchapter V Trustee.

THE COURT: Good morning.

MS. STEVENS: Good morning, Your Honor. Lisa Stevens on behalf of the United States Trustee.

THE COURT: Good morning.

MS. EDWARDS: Good morning, Your Honor. Ashley Edwards on behalf of the City of Gastonia.

THE COURT: Good morning.

MR. GRAMS: Good morning, Your Honor --

MR. GAFFEY: Good morning, Your Honor. Dave Gaffey of Whiteford, co-counsel to the City of Gastonia.

THE COURT: Good morning.

MR. GAFFEY: Good morning.

MR. GRAMS: Good morning, Your Honor. Rick Grams on behalf of the Atlantic League of Professional Baseball.

THE COURT: Good morning.

All right, and I believe the rest of the folks are principals of the various parties, and possibly creditors or people interested in listening.

On Tuesday, February 20, 2024, this matter came before the Court for a hearing on debtor’s motion to vacate order granting City of Gastonia relief from the automatic stay, Docket 100, the City’s response, at Docket 114, and the debtor’s reply at Docket 132.

The Court heard testimony and admitted exhibits from both parties. Witnesses called were Del McCall, Project Manager for A-1 Disaster Resources; Trevor Fuller, Debtor’s counsel in litigation pending in the Western District of North Carolina; Veronica Jeon, COO of Debtor’s parent company, Momentous Group LLC; Brandon Bellamy, Debtor’s principal; and John Philip Bombardier, Special Project Advisor for the City of Gastonia.

At the conclusion of the hearing, the Court took the matter under advisement.

This Court has jurisdiction over this matter pursuant to 28 U.S.C., Section 157, 28 U.S.C., Section 1334. This is the core proceeding, 28 U.S.C., Section 157(d)(2)(A). Venue is proper, 28 U.S.C., Section 1409(a).

The following constitutes the Court's findings of fact and conclusions of law, Federal Rule of Civil Procedure 752, and Bankruptcy Rules 7052 and 9014.

In the interest of time, I will not recount all the relevant history in this oral ruling. Debtor's pre and post petition history is well known to the parties and was adequately recounted in the Court's oral ruling on December 19, 2023, which I incorporate into this oral ruling.

In summary, Debtor filed this case on Friday, December 1, 2023. And less than a week later, the City of Gastonia moved for relief from stay on an emergency basis.

The Court held an expedited preliminary hearing on Friday, December the 8th. At that hearing, the Court ordered that Debtor was prohibited from holding any events at the stadium, expressed the importance of Debtor obtaining adequate insurance, and ordered Debtor to obtain insurance by Monday, December 11, 2023.

The Court also set a final in-person hearing on the City's motion for relief from the stay for Thursday, December 14, 2023.

Between the preliminary and final hearing, Debtor

obtained some insurance, but the insurance obtained, by Debtor’s counsel’s own admission, did not fulfill its insurance obligations under the agreements with the City.

At the final hearing, the Court heard reliable testimony regarding Debtor’s failure to obtain adequate insurance, failure to properly maintain the stadium, and the then present disrepair of various parts of the stadium resulting from Debtor’s ongoing failure to maintain.

Following that hearing, the Court took the matter under advisement.

The Court issued its oral ruling on December 19, 2023. In its oral ruling, the Court focused heavily on the evidence showing a present need for cleaning, repairs, and maintenance for the stadium, as well as Debtor’s failure to obtain or maintain adequate insurance on the stadium.

Debtor’s failure to obtain and maintain insurance, fulfilling its obligations to the City, was not subject to genuine dispute.

Further, the City presented more than adequate evidence regarding the condition of the stadium to present a colorable claim for breach of the agreement and lack of adequate protection.

On December 22, 2023, Debtor visited the stadium and took pictures of other areas of the stadium, which show that at least some parts of the stadium are not in total disrepair.

However, even these pictures reflect Debtor’s neglect of the stadium.

Debtor called an expert, Mr. McCall, to examine the stadium and determine what would be necessary to bring maintenance up to industry standard.  At the hearing, Mr. McCall testified that he believed that 90 percent of the stadium was in good condition, but that 10 percent needed more extensive cleaning, repairs, or replacement.  Mr. McCall opined that it would cost approximately $20,000 to address the issues at the stadium.

Thereafter, Debtor continued its efforts to obtain adequate insurance.

On January 23, 2024, which is nearly two months post petition and four months since its prior policy was terminated, Debtor asserts that it obtained more robust insurance coverage, which Debtor believes fulfills its obligations to the City. Debtor has only provided to the Court and the City a copy of the Certificate of Liability Insurance.  It appears that Debtor did not possess copies of the applicable insurance policies, and has presented no evidence of the actual terms of those policies, or the exclusions applicable thereto.

Further, while the Certificate of Insurance shows that Debtor and the City are listed as additional insureds under the policies, the policies are in the name of a separate entity, Momentous Group LLC, which, like the debtor, is solely

owned by Mr. Bellamy.

As the policies were not provided, it is unclear whether payments made under these insurance policies on behalf of Momentous Group could reduce the amount of coverage available to the debtor.

Given the numerous questions surrounding the newly acquired insurance policies, and Debtor’s inability to produce copies of the policies, Debtor has not shown that its present insurance coverage satisfies its insurance coverage obligations to the City.

Debtor asks the Court to vacate the order granting stay relief on four grounds under Federal Rule of Civil Procedure 60:

First, Debtor asks the Court -- says that the Court should correct its order under 60(a), which provides that “The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.”

Additionally, Debtor cites three provisions under Rule 60(b), which provide, in relevant part, that “The court may relieve a party or its legal representative from final judgment, order, or proceeding for mistake, inadvertence, surprise, or excusable neglect; newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); fraud,

misrepresentation, or misconduct of an opposing party."

The Fourth Circuit has held that reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. Pacific Insurance Company versus American National Fire Insurance Company, 148 F.3d 396 (Fourth Circuit 1998).

The Fourth Circuit recognizes the following three grounds for granting motions to reconsider: accommodate an intervening change in controlling law; to account for new evidence not available at trial; to correct a clear error of law or prevent manifest injustice.

A motion to reconsider is not an appropriate means of raising arguments or presenting evidence that could have been raised or presented prior to the Court's entry of the order. As the Court stated in its oral ruling on December 19, hearings on motions seeking relief from the automatic stay are intended to be summary in nature. The merits of claims are not in issue and the procedural setting is not one appropriate for the assertion of counterclaims. In Re ASI Reactivation Inc., 934 F.2d 1315 (Fourth Circuit 1991).

The moving party need only have a colorable claim to establish standing to bring a motion for relief. In Re Bird, Westlaw 829105, Bankruptcy District of Maryland (February 18, 2022).

In other words, the movement must demonstrate that it

has rights to proceed, but not necessarily that it will prevail in State Court.

Here, Debtor argues under Rule 60(a) that the Court erred by not clarifying in the order granting stay relief that the ipso facto clause in the City's agreement was unenforceable pursuant to 365(e). The Court's failure to clarify that the ipso facto clause as unenforceable in the order was not an error because that issue was not previously raised by either party.

However, Debtor is certainly correct that 365(e) renders the ipso facto clause unenforceable and the grant of stay relief to the City did not change that.

Further, in the December 19 oral ruling, the Court explicitly stated that whether and how long the Debtor had to curate defaults under its agreements with the City was a matter of non-bankruptcy law that can and should be resolved in the appropriate State Court.

In summation, the Debtor has not shown a mistake, oversight, or omission with respect to the Court's prior ruling. And its request to vacate or amend the Court's December 19th oral ruling or the order granting stay relief pursuant to 60(a) will be denied.

Debtor's arguments under Rule 60(b) are less detailed. While, the Debtor cites Subparagraphs 1, 2, and 3, Debtor devotes much of its efforts to a fourth ground, so-

called changed circumstances.

In support of its argument, Debtor relies heavily on a case out of the Tenth Circuit, In Re Gledhill, 76 F.3d 1070 (Tenth Circuit 1996). In that case, the court upheld the Bankruptcy Court vacatur of order granting relief from stay based on changed circumstances. The changed circumstances in that case were that after court granted stay relief, the case was converted to Chapter 7, the subject property's value increased significantly, and the Chapter 7 trustee determined that a sale of the property in question would result in proceeds being distributed to the estate's creditors. The Tenth Circuit explained that vacating the grant of stay relief may be warranted under Rule 60(b)(6) only where there were exceptional circumstances.

The movant's obligation to show exceptional circumstances under the Gledhill decision is consistent with long-standing Fourth Circuit precedent.

In Dowell versus State Farm Fire and Casualty Insurance Company, 993 F.2d 46 (Fourth Circuit 1993), the Fourth Circuit quoted from its prior decision in Werner v. Carbo, 731 F.2d 204 (Fourth Circuit 1984), that before a party may seek relief under Rule 60(b), a party must first show timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.

Debtor did not cite to rule 60(b)(6) in its motion.

That said, Debtor also fell far short of showing that exceptional circumstances exist here.

Debtor argues that its procurement of more robust insurance coverage and evidence regarding the condition of the stadium are sufficient changed circumstances to warrant vacating the City's stay relief. As stated above, Debtor's proof regarding its current insurance coverage was underwhelming. The Court simply cannot determine whether Debtor has satisfied its insurance obligations to the City.

Further, assuming arguendo that Debtor had obtained adequate insurance, there would be some change in relevant circumstances, but that would not be an exceptional circumstance that would justify vacating the City's stay relief.

After months of subjecting the City to unreasonable risk, a risk that was, for much of the time, not fully known to the City because of Debtor's failure to notify the City of its lack of coverage, Debtor cannot simply declare no harm, no foul because it may have obtained more substantial insurance coverage.

Further, Debtor's evidence regarding the condition of the stadium did nothing to call into question the Court's finding regarding Debtor's failure to properly maintain the stadium. If anything, Debtor's evidence provided greater support for the Court's finding.

Finally, as argued by counsel for the City, Debtor failed to make a showing regarding the existence of a meritorious defense and the lack of prejudice to the City as required under Werner.

Accordingly, Debtor failed to satisfy its burden of showing exceptional circumstances, warranting vacating the Court's December 19th oral ruling or the order granting stay relief. And the Debtor's request, pursuant to Rule 60(b)(6), will be denied.

As to Debtor's argument under Rule 60(b)(1), it has not shown any mistake, inadvertence, surprise, or excusable neglect that would justify vacating the order granting stay relief.

As to the Debtor's arguments under Rule 60(b)(2), Debtor's evidence presented at the hearing on the motion to vacate would not, if it had been presented on December 14th, change the Court's ruling.

With respect to the condition of the stadium, the Court was never under the impression that the photos submitted into evidence by the City on December 14th were representative of the condition of the entire stadium. The Court expected that the City would present pictures of primarily the worst areas of the stadium. And that is all that was necessary for the City to meet its burden of showing a colorable claim that Debtor had breached its maintenance obligations under the

agreement and that as such, the City was not adequately protected.

Debtor’s own expert testified that ten percent of the stadium was in need of attention, varying from a deep clean to removal and replacement of drywall.

Further, Debtor’s expert testified that he believed some of the stadium’s issues could be easily taken care of with a cleaning. Far from supporting Debtor’s position, such testimony tends to show the extent and breadth of Debtor’s neglect of the stadium. Debtor was not obligated to keep only 90 percent of the stadium in good repair. It was required to maintain the entire stadium.

The new evidence presented by Debtor did not call into question the Court’s ruling granting the City relief from the automatic stay. In fact, Debtor’s evidence on the condition of the property further supported the Court’s finding and conclusion that the City has a colorable claim that Debtor has seriously breached its maintenance obligations, and that the City is not adequately protected because of the ongoing deterioration to the stadium if these issues remain unaddressed.

With respect to insurance, Debtor did not present convincing evidence that it has obtained insurance fulfilling its obligations to the City. Too many questions remain with respect to the coverage listed in the Certificate of Insurance

presented by Debtor. Debtor carries the burden of proof on this issue, not only with respect to the motion to vacate, but also on the City's motion for stay relief.

As such, the Court reaffirms its prior holding that the City has presented a colorable claim that Debtor is in breach of its insurance and maintenance obligations, and that the City lacks adequate protection with respect thereto.

Lastly, Debtor asserts that it obtained the photos of the stadium on December 22nd, 2023. This is well before the 28-day deadline under Rule 59.

As such, assuming arguendo that this evidence was unavailable to Debtor prior to the hearing on the City's stay relief motion, this evidence was discovered in time to move for a new trial under 59(b). As such, it will not form the basis for a request for relief under Rule 60(b)(2).

As to Debtor's argument under Rule 60(b)(3), the Debtor has not presented evidence that would support a finding of fraud, misrepresentation, or misconduct by the City. Debtor's counsels alleged conspiracy or confederation between the City and the League, but presented absolutely no evidence of fraud, collusion, or any misconduct by the City.

Based on the foregoing, the Court finds and concludes that the motion to vacate should be denied, and the Court will enter an order consistent with this ruling.

So that leaves for us the various motions that we did

not hear. And I'm happy to hear from the parties as to whether we need to set dates for those, or what the current position is with respect to the City and the Debtor on those.

MS. EDWARDS: I'm not sure, Your Honor. I'll let the Debtor speak first.

MR. DRESCHER: Thank you, Your Honor. And I very much appreciate the effort that the Court put into assessing the presentations earlier this week.

I think we need to huddle on our end to really decide what makes sense moving forward in this case in light of Your Honor's ruling today. What I would recommend, and ask, is to be given a day to submit some sort of status report as to requests for hearings on those outstanding matters or some other approach.

MS. EDWARDS: And, Your Honor, I think I do agree with Mr. Drescher on this. I think I'd like to talk to our client a little bit about timing and --

THE COURT: That -- I think that's a reasonable approach. I don't know if the parties will need to meet and confer, but why don't we -- why don't we have a status report filed, either jointly or individually, as to what the parties' positions are and needs for hearing on, let's say, by next Friday. It will give you a week to meet with clients and talk about things. It will also give me a little bit of time to get the order docketed.

MS. EDWARDS: Thank you, Your Honor.

MR. DRESCHER: Very well. Thank you, Your Honor.

MS. EDWARDS: Great.

MR. GRAMS: Your Honor, would that also apply to the motion regarding the 2004 examination of the League?

THE COURT: Yes. Yes. There's the motions for 2004 examination; there's the motion for turnover; there's a motion to request the trustee to inspect the premises; and I think there's another motion on the docket, but it wasn't ripe for consideration. But if -- if and when we decide what we're going to hear, the Court will try to group everything in so that it makes the most sense and saves people traveling and so forth.

And to the extent some of them are non-evidentiary, the Court would certainly entertain a request for virtual. My preference is in-person, but I would certainly entertain a request for virtual hearing if we're not having a lot of witnesses and things.

So I thank you all. I certainly appreciate the quality of the presentations. I think that all parties are zealously representing their clients, and the Court really appreciates that. So, you all have a good weekend.

MR. DRESCHER: Thank you, Your Honor.

MR. GRAMS: Thank you, Your Honor.

COURTROOM DEPUTY: Court is adjourned.

(Whereupon, at 10:56 a.m., the hearing was adjourned.)

CERTIFICATE OF TRANSCRIBER

I, KAREN HARTMANN, a certified Electronic Court Transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.



Karen Hartmann, AAERT CET 475  Date: February 24, 2024

TRANSCRIPTS PLUS, INC.