# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Case No. 23-18766-LSS |
| | ) | Chapter 11 |
| NC GAS HOUSE GANG LLC, | ) | |
| | ) | 6500 Cherrywood Lane |
| | ) | Greenbelt, Maryland 20770 |
| | ) | |
| | ) | February 20, 2024 |
| Debtor. | ) | 10:10 a.m. |

TRANSCRIPT OF HEARING (100) MOTION TO VACATE FILED BY DEBTOR NC GAS HOUSE GANG LLC; (101) MOTION FOR TURNOVER OF PROPERTY FILED BY DEBTOR NC GAS HOUSE GANG LLC; (102) MOTION FOR EXAMINATION FILED BY DEBTOR NC GAS HOUSE GANG LLC; (103) MOTION FOR EXAMINATION FILED BY DEBTOR NC GAS HOUSE GANG LLC; (104) MOTION FOR MISCELLANEOUS RELIEF FILED BY DEBTOR NC GAS HOUSE GANG LLC; (114) OBJECTION FILED BY CREDITOR CITY OF GASTONIA, A NORTH CAROLINA MUNICIPAL CORPORATION; (118) RESPONSE FILED BY CREDITOR CITY OF GASTONIA, A NORTH CAROLINA MUNICIPAL CORPORATION (119) RESPONSE FILED BY CREDITOR CITY OF GASTONIA, A NORTH CAROLINA MUNICIPAL CORPORATION; (120) RESPONSE FILED BY CREDITOR CITY OF GASTONIA, A NORTH CAROLINA MUNICIPAL CORPORATION; (121) AFFIDAVIT RE: AFFIDAVIT OF J. PHILIP BOMBARDIER FILED BY BRENT C. STRICKLAND; (122) OPPOSITION FILED BY CREDITOR ATLANTIC LEAGUE OF PROFESSIONAL BASEBALL; (130) EXHIBIT/WITNESS LIST FILED BY BRENT C. STRICKLAND; (132) RESPONSE ON BEHALF OF NC GAS HOUSE GANG LLC FILED BY RONALD J. DRESCHER
BEFORE THE HONORABLE LORI S. SIMPSON
UNITED STATES BANKRUPTCY COURT JUDGE

Operator: Gloria Bellman, Courtroom Deputy to the Honorable Lori S. Simpson

TRANSCRIPTION SERVICE: TRANSCRIPTS PLUS, INC.
435 Riverview Circle
New Hope, Pennsylvania 18938
Telephone: 215-862-1115
e-mail CourtTranscripts@aol.com

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES:

| | |
|---|---|
| For NC Gas House Gang LLC: | Law Office of Ronald J. Drescher<br>By: RONALD J. DRESCHER, ESQ.<br>10999 Red Run Boulevard, PMB 224<br>Suite 205<br>Owings Mills, MD 21117 |
| For Marc E. Albert, Subchapter V Trustee: | Stinson LLP<br>By: MARC E. ALBERT, ESQ.<br>1775 Pennsylvania Ave., NW<br>Suite 800<br>Washington, DC 20006 |
| For the Atlantic League of Professional Baseball: | McNees Wallace & Nurick<br>By: RICK M. GRAMS, ESQ.<br>600 Washington Avenue<br>Suite 300<br>Towson, MD 21204 |
| For City of Gastonia, a North Carolina Municipal Corporation: | Whiteford Taylor & Preston, L.L.P.<br>By: DAVID W. GAFFEY, ESQ.<br>7 St Paul Street, Suite 1900<br>Baltimore, MD 21202 |
| | Parker Poe Adams & Bernstein LLP<br>By: ASHLEY A. EDWARDS, ESQ.<br>620 South Tryon Street<br>Suite 800<br>Charlotte, NC 28202 |

# INDEX


| DEBTOR'S WITNESSES | PAGE |
|---|---|
| DEL McCALL | |
| Direct Examination by Mr. Drescher | 22 |
| Voir Dire by Ms. Edwards | 28 |
| Direct Examination continued by Mr. Drescher | 31 |
| TREVOR FULLER | |
| Direct Examination by Mr. Drescher | 41 |
| Cross-Examination by Ms. Edwards | 55 |
| Cross-Examination by Mr. Grams | 58 |
| Further Cross-Examination by Ms. Edwards | 59 |
| Redirect Examination by Mr. Drescher | 60 |
| VERONICA JEON | |
| Direct Examination by Mr. Drescher | 62 |
| Cross-Examination by Ms. Edwards | 77 |
| Redirect Examination by Mr. Drescher | 95 |
| BRANDON BELLAMY | |
| Direct Examination by Mr. Drescher | 97 |
| Cross-Examination by Ms. Edwards | 111 |
| Examination by the Court | 116 |

| CITY OF GASTONIA'S WITNESSES | |
|---|---|
| J. PHILIP BOMBARDIER | |
| Direct Examination by Ms. Edwards | 118 |
| Cross-Examination by Mr. Drescher | 147 |
| Redirect Examination by Ms. Edwards | 152 |

| SUMMATIONS | |
|---|---|
| By Mr. Drescher | 153 |
| By Ms. Edwards | 166 |
| Response by Mr. Drescher | 183 |
| Response by Ms. Edwards | 187 |
| By Mr. Albert | 188 |

| DEBTOR'S EXHIBITS | | ID | EVID |
|---|---|---|---|
| B | Certificate of insurance | 66 | 67 |
| C | Photographs | 24 | 25 |
| D | Letter (Peterson to Fuller) | 45 | 45 |
| E | Termination letter | 108 | 109 |
| F | Answer w/counterclaims | 45 | 47 |
| H | Insurance comparison document (Drescher) | 67 | 144 |

THE WITNESS: Trevor Fuller, 5970 Fairview Road, Charlotte, North Carolina 28210.

COURTROOM DEPUTY: Thank you.

THE COURT: Your witness.

MR. DRESCHER: Thank you, Your Honor.

DIRECT EXAMINATION

BY MR. DRESCHER:

Q Mr. Fuller, what do you do for a living?

A I, on occasion, practice law, and I’ve been doing that for 30 years.

Q All right. And how are you involved in this case?

A So I represent NC Gas House Gang LLC in the United States District Court for the West District of North Carolina.

Q All right. And that’s subject to (inaudible - audio fading), is that right?

A Yes.

Q All right. What -- what tasks and strategy have you been engaged to pursue in connection with the North Carolina litigation?

A So right now -- or when I started, what was pending was the City of Gastonia’s complaint against NC Gas House Gang. And so my duties involved representing the interests of NC Gas House Gang in that litigation.

Q All right. So once the order lifting the stay was entered on December 21st, what did you do?

A I filed a motion -- I'm sorry. I filed a notice of removal to the United States District Court from the Superior Court for Gaston County in North Carolina.
Q Do you have an idea how long -- what was the -- how -- when would have been your last day to file that notice of removal?
A When it was due?
Q Yeah.
A Well, that's an interesting question you ask. I addressed it in the notice of removal, because I expected there may be an issue about the timing of the notice of removal, which is why I acted so quickly. Because there was some concern about whether or not the time for removal could have passed, or at least not have been tolled by the filing of the bankruptcy.
Q All right. So I'd like you to turn to Exhibit L in the binder.
A Exhibit L. All right.
Q All right. So do you recognize this document?
A I do.
Q And what is this document?
A This appears to be the docket from the Pacer system reflecting the case that I am representing NC Gas House Gang in the Western District of North Carolina.
Q And as far as you can tell, does this exhibit contain all of the documents that have been filed with the North Carolina

United States District Court?

A Yes, as far as I can tell.

Q All right. And is there anything missing, or inconsistent, or erroneous about this document, as far as you can tell?

A Not that I can see.

MR. DRESCHER: Your Honor, I'd move to admit Exhibit L into evidence.

THE COURT: Any --

MS. EDWARDS: No objection to that, Your Honor. But I am concerned about the relevance of what Mr. Fuller is here for because it goes to Rule 60.

THE COURT: Number one, I will allow Exhibit L to be admitted.

(Debtor's Exhibit L in evidence)

THE COURT: And I will overrule your objection now because I haven't heard enough of his testimony to know yet whether or not it will be relevant. I think it's a little too soon in the examination.

MS. EDWARDS: Thank you, Your Honor.

BY MR. DRESCHER:

Q How often have you practiced before the United States District Court in North Carolina where this action is pending?

A A long time. Probably since the year 2000.

Q Do the -- do the rules of that court provide for hearings

on expedited notice?
A Oh, absolutely, yes.
Q All right. What’s involved? How do you get hearing on expedited notice in that court?
A Well, it depends on what kind -- what it is. But -- but you would -- you could file an emergency motion in the Federal District Court, just as you could in the State Court.
Q All right. So were any such emergency motions filed by the City in this case?
A No.
Q All right. Was there anything preventing them from doing that, as far as you know?
A Nothing that I know of.
Q All right. So when was the first document that the City filed in this litigation down there?
A The first, I believe it was the motion for judgment on the pleadings, I believe is the first thing that the City filed.
Q And what was the date that was filed?
A That was filed on February 1st, 2024.
Q And roughly how many days after the Court lifted the stay was that filing done?
A So the lifting of the stay was on December 21st of ‘23, so nine days there, 31 days in January, and then one day in February. So 41 days.
Q Now I’d like to turn your attention to Exhibit D.

A Yes.
Q All right. Have you seen this document before?
A I have.
Q And what is this document?
A This is a letter sent to me from Daniel Peterson, who I understand is counsel for the City in North Carolina, he is at the firm of Parker Poe. And this appears to be -- or purports to be a letter titled, “Automatic termination by active bankruptcy” relating to this matter.
Q Between December 21st and the date of this letter, did you hear anything from the City of Gastonia?
A I did not.

MR. DRESCHER: Your Honor, I’d like to move Exhibit D into evidence.

MS. EDWARDS: No objection.

THE COURT: Exhibit D will be admitted.

(Debtor’s Exhibit D in evidence)

BY MR. DRESCHER:
Q All right. I’d like to direct your attention to Exhibit F.
A All right.
Q All right. So could you tell the Court what this document is?
A So this is the answer with counterclaims that I prepared and filed on behalf of NC Gas House Gang LLC.

Q And could you, as briefly as a lawyer can, explain what is contained in that document?

A Sure. So this -- the answer part of this responds to the complaint that the City filed sometime in November of ‘23, and denies, admits, etc., to the various allegations in the answer.

And then we asserted ten affirmative defenses to the complaint filed by the City.

And in addition to that, I included counterclaims against the City relating to not only the lease, which by that term we are referring to two agreements, the Exclusive Use Area Lease Agreement and the Use and Occupancy Agreement, together as the lease.

And then there’s also another agreement between NC Gas House Gang and the City, and that is the Economic Development Agreement, which actually is the overarching agreement that this lease was part of.

And so the counterclaim relates to the -- what I allege in this was the confederation and conspiracy between the City and the League to have driven NC Gas House Gang from the lease and from ownership of the team. And so I lay out in these counterclaims those claims that relate to the City as to that confederation and conspiracy. And so we -- we have several claims here for breach of contract; breach of the duty of good faith and fair dealing; tortuous interference with

contracts; and under North Carolina law, the Unfair and Deceptive Trade Practices Act, violations of that Act; and the final is the breach of contract by repudiation relating to the Economic Development Agreement.

Q Okay; thank you.

MR. DRESCHER: Your Honor, I would like to move Exhibit F into evidence.

THE COURT: Any objections?

MS. EDWARDS: No objection.

THE COURT: All right.

MS. EDWARDS: I think you could probably take judicial notice.

THE COURT: All right.

MR. GRAMS: I would just note an objection as to the relevance.

THE COURT: Okay.

MS. EDWARDS: Agreed.

THE COURT: Exhibit --

MS. EDWARDS: I agree -- agreed on that.

THE COURT: Exhibit F will be admitted into evidence.

(Debtor’s Exhibit F in evidence)

Q All right. I’d like to turn to Exhibit O.

A All right.

Q All right. Have you seen -- this is an exhibit that contains approximately, what, four pieces of paper, double-

sided printed?
A Yes.
Q All right. Have you seen this document before?
A I have.
Q All right. What is this document?
A So this document is an attachment to an agenda item for the Gastonia City Council, and I'm speaking in part on my experience --
MS. EDWARDS: Objection. Are you the recipient of this document? Or -- we're going to need to lay a foundation on this one.
MR. DRESCHER: All right, I can do that.
THE COURT: Great.
Q All right. So how did you come to learn about this document?
A So I, in addition to having been a lawyer for over 30 years, also served as an elected official in North Carolina as a County Commissioner. And public bodies in North Carolina, when they hold their meetings, they have agendas. And each agenda item is an action for that body to take. And when you put an item on an agenda, usually there will be attachments that are the explanation, the background of that particular agenda item. So it's common practice for public bodies in North Carolina, including cities, including counties to have agendas for their meetings, and these are all consistent with

the statutes in North Carolina. And then to have an item like this, Exhibit O, which would be an attachment, a background for a particular action item for that public body.

And so what this document is, Exhibit O, is that formal public attachment to an agenda item, public agenda item for the City of Gastonia.

Q And how did you come to locate these documents?

A These documents are all available publicly. They are on the Internet, anyone can find them. They are readily available. And, in fact, even if you didn't know how to find such a document, you could call the Clerk of the City Council in Gastonia, and you would easily be able to obtain this document.

Q Okay. And are these documents true and correct copies of the documents that are publicly available, as far as you know?

A Yes.

Q So I'd like you to take a look at the first document, Pages 1 and 2, all right? Do you see that it's dated June 6th, twenty twenty (inaudible - audio fading)?

A Yes.

Q Do you think that's a correct date?

A Well, it couldn't be because in one of the first paragraphs in this document, it refers to something happening on November 13th of 2023. And insofar as November comes after June, the June date must be a mistake.

Q Let's look at the -- the fourth page which is -- there's very little printing on it. It's not the fourth piece of paper.
A Oh.
Q It's the fourth printed page.
A Yes, uh-huh.
Q All right. And do you see at the top it says, "This resolution adopted the 16th day of January, 2024"?
A I do.
Q Do you think that it's more likely then that -- that if we turn to the very first page of the document -- of the document, that that would be a more accurate date for this memorandum?
A I'm almost certain of it, and it can be confirmed simply by reviewing the public record.
Q Okay. Now, let's look at the first -- at these first four pages. Can you tell us what these documents are attempting to accomplish on behalf of the City of Gastonia?
A Yes, so it is relatively common for the -- in this case, City attorney, in our case with the County, it would be the County attorney, to issue to the board members a -- a memorandum just explaining what's happening. Sometimes the attorneys will talk about some law in these memos. But what they're intended to do is to assist the elected leaders in making a decision on the particular item that's on their agenda.

So that's why you see a background here. You see -- and this is fairly common, you will see a recommendation, recommended action of the elected leaders, and that's what this memorandum is intended -- is attempting to do.

Q Now, what is the recommended action in these documents?

A So in this first page, the staff is recommending to the City Council members that because of ongoing litigation relating to NC Gas House Gang and the stadium, it's to approve a resolution and a budget amendment.

And so if I can just explain that process very quickly. A budget amendment refers to the fact that each year the elected body has to adopt a budget. That budget is actually an ordinance, it's actually a law. And so the City cannot spend money without having some authority under law to do so. A budget amendment is the process by which the City changes that budget ordinance. So before this amount of money was going to be spent --

MS. EDWARDS: Objection.

A -- this way --

MS. EDWARDS: Is this in --

THE COURT: Wait just a minute.

MS. EDWARDS: Is this in the scope of his expertise? The only thing he's supposed -- he said he was speaking on is the litigation. And now, all of the sudden, he's going into government policy.

MR. DRESCHER: He also talked about the fact that he was an elected official, and he talked about how he downloaded these documents from the Internet. These are publicly available documents and he's describing what's in the documents.

THE COURT: Well, I think the documents speak for themselves. I'm inclined to sustain the objection.

MS. EDWARDS: Thank you, Your Honor.

MR. DRESCHER: Well, I'd like to at least admit the documents into evidence.

THE COURT: This is Exhibit O?

MR. DRESCHER: Correct, Your Honor.

THE COURT: I think it's already admitted. I think there was no objection to it.

MS. EDWARDS: No --

THE COURT: But make them wrong.

MS. EDWARDS: No, this -- this is new. And, Your Honor, I don't think that we have a real objection.

I would just note for the Court that this is the second hearing in which they did not file any of these exhibits in advance. This is their motion, and so these are the very first time we're seeing that even though, again, this was their motion that was set in January. And you can do with that what you will.

THE COURT: All right; thank you.

MR. GRAMS: And I would also --

THE COURT: Exhibit --

MR. GRAMS: Oh, I'm sorry. I would also point out, Your Honor, there appear to be a few resolutions here. In the first one, there are signatures on the first document. There are blanks for signatures on the other documents, but there are no signatures.

THE COURT: Okay. Can you turn the mic towards you?

MR. GRAMS: Oh.

THE COURT: So we can pick up what you're saying?

MR. GRAMS: I'm sorry.

THE COURT: I can hear you remarkably, but go ahead.

MR. GRAMS: Again, Your Honor, I was pointing out that there -- there is one resolution that appears to be signed by the appropriate signatories. There are blanks for signatures on the other resolutions; they're unsigned. I would just note that for Your Honor. I'm not sure that these are official resolutions.

THE COURT: We don't know whether they've been enacted, but we at least know that this is something that they pulled from the public record. So I'll take that for what it is, and I'll admit -- subject to your comments, I will admit Exhibit O.

(Debtor's Exhibit O in evidence)

BY MR. DRESCHER:

Q Exhibit O contains a number of resolutions, is that correct?
A Yes.
Q Were these all from the same date and time?
A Yes. And the process is that once an agenda item has been discussed at a meeting -- a public meeting, and the resolutions have been adopted at that meeting, it is at that time -- I know this because when I was Chairman of the County Commission, this would happen in the County Commission meetings. At that time, after the meeting is when they would be signed.
Q Does the first resolution increase the budget for the City to litigate against NC Gas House Gang by a half million dollars?
A Yes, I think the more accurate way to say it is that each entity has a fund balance, which is essentially their bank account -- their savings account. And this action reflects that the City is taking from its savings account its reserve and moving it from the reserve, this $500,000, to whatever vehicle they're using to fund this dispute, and everything having to do with the lease.
MS. EDWARDS: Objection. It says "Legal Services."
THE COURT: It does.
MS. EDWARDS: It says nothing about anything related to the litigation.
THE WITNESS: I'm just telling you based on my

knowledge.

THE COURT: All right. I'm going to admit the document. The document speaks for itself. And I will strike the rest of it since it's not mentioned in the document.

MS. EDWARDS: Thank you, Your Honor.

MR. DRESCHER: Thank you, Your Honor. As long as I'll have the opportunity to argue about --

THE COURT: You may argue --

MR. DRESCHER: -- it based of the content --

THE COURT: -- to your heart's content, Mr. Drescher.

MR. DRESCHER: Thank you very much, Your Honor, I appreciate that.

All right. Your Honor, I have no further questions.

THE COURT: Cross-examination?

MS. EDWARDS: Just briefly, Your Honor.

CROSS-EXAMINATION

BY MS. EDWARDS:

Q Good morning, Mr. Fuller.

A Good morning.

Q So -- oh, I'm sorry --

(Pause)

Q Just briefly, Mr. Fuller. So it's your testimony that this is a true and correct docket from -- I think it was your Exhibit F -- L that was the Federal Court docket.

A You said Exhibit L?

Q Yes. So it --
A Yes, uh-huh.
Q And it's your testimony that the day this Court ruled, you removed the State Court action to Federal Court, correct?
A On December 21st, yes.
Q Yes. And are you not given an opportunity to answer in that? Wasn't the -- the complaint was filed, and so you were afforded the opportunity to answer.
A Okay, I guess I'm not understanding. What -- what I did first was to remove it to Federal Court, and then the answer would follow that.
Q And you first sought an extension of time to file the answer.
A Yes, on January 3rd, that's correct, an extension of time to file an answer.
Q So until that time, you were afforded an opportunity to respond to the complaint, is that correct?
A Well, that's what I was in the process of doing.
Q Okay. And then as soon as you did then answer, you answered then on January 22nd, is that correct?
A That was the extension date, yes.
Q And then what would that be? What, eight or nine days later, there was -- the City filed the motion for judgment on the pleadings about the entire complaint, your answer, and counter claims, is that correct?

A On February 2nd.
Q February 1st.
A I'm sorry, February 1st. Yes, that's correct.
Q And do you know how many pages that document is?
A I don't remember.
Q Okay. And did the City move to strike many of your statements in your answer?
A Move to strike?
Q Is that not correct?
A I don't remember a motion to strike.
Q So there's a motion to strike -- there is a motion to strike filed. But then you filed -- you tried to file a third party complaint, but didn't follow the rules on that, and the City moved to strike that, is that correct?

MR. DRESCHER: Your Honor, I object. This doesn't really go to his direct testimony about what the City did and the timeliness of the City's actions.

THE COURT: I'm going to overrule the objection, and allow it. I allowed quite a bit of leeway with Mr. Fuller's testimony as to the docket and what he did. And I'm going to allow Ms. Edwards an opportunity to cross on those issues.

MR. DRESCHER: Thank you, Your Honor.

MS. EDWARDS: Your Honor, I think that's all I have. I think the docket speaks for itself.

THE COURT: All right.

MS. EDWARDS: Thank you, Your Honor.
THE COURT: Thank you.
Mr. Grams?
MR. GRAMS: Yes, very briefly, Your Honor.

CROSS-EXAMINATION

BY MR. GRAMS:
Q Good morning, Mr. Fuller.
A Good morning.
Q Mr. Fuller, you testified that the first action the City took in this case was the filing on February 1st.
A That’s my understanding, yes.
Q Okay. But didn’t they file something on January 31st?
A January 31st, um --
Q Because it appears that you filed the counterclaim on the last permitted day of your extension.
A All right, hold on. What -- you’re referring to what document now?
Q 6.
A Document 6?
Q So in Exhibit -- your Exhibit L --
A Exhibit L, okay; thank you. Hold on. Yes, uh-huh.
Q Okay. You testified that the first thing the City did was to file the motion for judgment on February 1st.
A Uh-huh.
Q But didn’t -- wasn’t there an answer to the counterclaim

filed on January 31st, if I'm reading this docket correctly?

A Yes, on January 31st, there was an answer to the answer. That's kind of a weird way to say it, but an answer to the answer to the complaint and the counterclaims. Yes, that's correct.

Q Correct. And obviously, this all arose from the complaint that, I think, you testified was filed by the City in November of 2023.

A That's correct.

Q Okay.

MR. GRAMS: Nothing further.

THE COURT: Thank you. Any --

MS. EDWARDS: I'm sorry, a couple -- or -- go ahead.

MR. DRESCHER: No redirect, Your Honor.

THE COURT: All right.

MS. EDWARDS: Just -- just one to change -- or to ask that.

FURTHER CROSS-EXAMINATION

BY MS. EDWARDS:

Q So if it was January 31st, do you change your testimony about 41 days?

A Well, I guess it would be thirty -- 39 days, I suppose.

Q Okay. So it's not 41 days. They filed in January.

A So it'd be 40 days, I guess.

Q And we filed -- and was that about the first day that we

could -- we -- we filed the answer, gosh, 22 through 31 -- well, nine days. So nine days after you filed counterclaims, we had a much longer time to respond, but we answered in nine days, is that accurate?

A Well, I could say you should have been ready as soon as my answer came in.

Q With the counterclaims? With ten affirmative defenses --

A Yeah.

Q -- and counterclaims?

A Yeah, wouldn't be surprising.

Q Is it a true statement to say that the City has abandoned its non-bankruptcy litigation?

A No, I do not think that's accurate to say.

MS. EDWARDS: Thank you, Your Honor. Perfect.

MR. DRESCHER: I do have redirect now.

MS. EDWARDS: Now you have -- now you have some redirect.

MR. DRESCHER: Now I do.

(Laughter)

REDIRECT EXAMINATION

BY MR. DRESCHER:

Q Would it be fair to say that the City has abandoned its effort to judicially terminate the lease and Exclusive Use and Operating Agreement?

A I can't say what the City is -- what's in the City's mind.

Q    But I'm talking that from the docket.  I mean, as -- you had testified that they could have moved immediately for affirmative relief upon the removal.
A    Yes.
Q    Okay.  But they did not do that.
A    I could only tell you what they filed.
Q    All right, but they didn't do that.
A    They didn't do that.
Q    Right, okay.

MR. DRESCHER:  No other questions, Your Honor.

THE COURT:  Thank you, Mr. Fuller.

MR. FULLER:  Thank you.

THE COURT:  You are excused from the stand.  I hope you all will let me know if you need breaks.  I have a tendency to get ensconced and forget what time goes by.  So if somebody needs a break, please don't hesitate to ask.

MR. DRESCHER:  Thank you.  I may take Your Honor up on that, but I think I'm okay for now.

THE COURT:  Okay.

MR. DRESCHER:  All right.  Thank you, Your Honor.

I'd like to call Veronica Jeon to the stand.

THE COURT:  All right, Ms. Jeon, would you please take the stand?

COURTROOM DEPUTY:  Please raise your right hand.

VERONICA JEON, DEBTOR'S WITNESS, SWORN