**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No. 3:23-CV-00892-RJC-SCR**

| | |
|---|---|
| **CITY OF GASTONIA, a North Carolina municipal corporation,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**NC GAS HOUSE GANG LLC, a Wyoming limited liability company,**<br><br>        **Defendant.**<br><hr><br>**NC GAS HOUSE GANG LLC,**<br><br>        **Defendant and Third-Party Plaintiff**<br><br>**v.**<br><br>**ATLANTIC LEAGUE OF PROFESSIONAL BASEBALL CLUBS, INC., and RICHARD E. "RICK" WHITE,**<br><br>        **Third-Party Defendants.** | **AMENDED COMPLAINT** |

NOW COMES the City of Gastonia, by and through undersigned counsel, complaining of NC House Gang, LLC, and avers and alleges, through the filing of this Amended Complaint, as follows:

## PARTIES AND BACKGROUND

1.      The plaintiff, the City of Gastonia ("the City"), is a North Carolina municipal corporation organized and existing under the laws of the State of North Carolina, and is situated

in Gaston County, North Carolina. The City Council of the City of Gastonia has authorized this action.

2.      The defendant, NC Gas House Gang, LLC ("GHG"), is a limited liability company organized and existing under the laws of the State of Wyoming, with its principal place of business in Gaston County, North Carolina. Brandon Bellamy is the sole manager/member of GHG and, upon information and belief, is a resident of the State of Maryland.

3.      At all times relevant, GHG has operated a member team of the Atlantic League of Professional Baseball Clubs ("Atlantic League"), called the Gastonia Honey Hunters, in a multi-use sports and entertainment facility constructed by the City, with a fixed seating capacity for approximately 2,000 attendees (this facility is hereinafter referred to as "the Stadium").

4.      The City is the record owner of the Stadium, which is identified by the Gaston County Tax Office as parcel number 301025 and PIN# 3545571938 and has a physical address of 800 W. Franklin Blvd., Gastonia, NC 28052. The property tax market value for the property is $7,469,600 of which $5,766,400 is the market improvement value-- *i.e.*, the Stadium is a multi-million-dollar asset of the City.

5.      As detailed below, the City and GHG entered into an Exclusive Use Area Lease Agreement ("EUALA") (Ex. 1, pp. 2-12) as well as a Use and Operating Agreement ("UOA") (Ex. 1, pp. 13-168) (collectively referred to as "the Agreements") in June 2020 contemplating that a professional baseball team sanctioned by the Atlantic League would operate a full-season schedule in the Stadium and that the GHG would manage and be responsible for the Stadium and surrounding premises.

6.      GHG had a history of materially breaching the Agreements by failing to meet its financial obligations and in failing to maintain the Stadium as agreed.

7.     This culminated in the Atlantic League terminating the GHG's membership on or about November 13, 2023.  This termination by the Atlantic League constitutes a Team Default by GHG under the Agreements, which entitled the City to terminate the Agreements.

8.     GHG also failed to notify the City that it had allowed the insurance required by the Agreements to lapse. Compounding this issue, GHG later tried to retroactively date an insuring agreement such to make it appear that it had the requisite insurance in place.

9.     Again, as further described below, the City validly terminated the Agreements.

10.     Further, GHG's defaults and misconduct have made frustrated the purpose of the Economic Development Agreement ("EDA") which was executed and attached to the UOA as Exhibit G (Ex. 1, pp. 137-168).

11.     The City is entitled to declaratory relief and compensatory damages for GHG's breaches and misconduct.

## JURISDICTION & VENUE

12.     When initially commenced on or around November 17, 2023, the City filed this action in the Gaston County Superior Court of the General Court of Justice for the State of North Carolina. That Honorable Court had subject matter jurisdiction of the above-captioned action in accordance with N.C. Gen. Stat. § 7A-240.

13.     Likewise, that Honorable Court has personal jurisdiction over the Defendants named in the above-captioned action in accordance with the provisions in N.C. Gen. Stat. § 1-75.4 and venue was appropriate in accordance with N.C. Gen. Stat. § 1-82.

14. Thereafter, GHG removed this action to this Honorable Court, which has subject matter jurisdiction pursuant under 28 U.S.C. § 1331 due to the diversity of the parties and the amount in controversy exceeding $75,000.

15. This Honorable Court has personal jurisdiction over the parties, as GHG conducted all or nearly all of its business in Gaston County, North Carolina.

16. This Honorable Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS
### *The Agreements*

17. After months of negotiation, or around June 23, 2020, the City and Defendant entered into two agreements, the EUALA and the UOA. GHG also purported to "represent" Project Velocity in the EDA, though GHG itself is not a party to the EDA.

18. The EUALA incorporates the UOA in full as its Exhibit A and the EDA as its Exhibit G.

19. A true and accurate bates-stamped copy of the EUALA, including its exhibits (and thus the UOA) is attached hereto as **Exhibit 1** and is hereby referred to and incorporated as if fully set forth herein.

20. The EUALA governs the lease terms of certain premises as defined in the EUALA and UOA, but which includes the Stadium and surrounding parcels. The lease term under the EUALA is for a period of twenty (20) years.

21. The UOA governs the management of the Stadium.

22. GHG has materially breached and defaulted upon both of the Agreements.

23. By breaching and defaulting on the Agreements, GHG frustrated the purpose of the EDA.

### *Team Default: Failure to Maintain its Membership in the Atlantic League*

24.     GHG represented in the UOA that it either held a membership with the Atlantic League or otherwise was working towards that end.

25.     Where the UOA refers to the "Sanctioning Association," it is referring to the Atlantic League.

26.     GHG has a continuing obligation under UOA § 7.17 (Ex. 1, p. 45) to remain a member of the Atlantic League and, under UOA § 2.2(g) to "play all Team Games and any all-star games awarded to the Team by the Sanctioning Association at the Stadium." (Ex. 1, p. 25.)  *See also*, *UOA § 4.9* (Ex. 1, p. 31).

27.     Under UOA § 7.25, the Team is required "at all times" to "own and maintain in good standing a Team that (a) is a full season minor league baseball team in a recognized professional baseball league, and (b) is authorized by the Sanctioning Associate to play its home games at the Stadium." (Ex. 1, p. 46.)

28.     Under UOA § 11.3(f), it is a Team Default if the Team "fail[s] to maintain approval and good standing by a Sanctioning Association of the Team…". (Ex. 1, p. 52.)

29.     In the months preceding its membership termination by the Atlantic League, GHG fell out of good standing by its failure to meet its financial obligations, including defaulting on its membership fee and failing to pay the baseball players and other essential bills.

30.     GHG's financial position was so poor in July 2023 that the Atlantic League, through its president Rick White, had to guarantee to GHG's players that the Atlantic League would see to it that they got paid through the conclusion of the season.  The Atlantic League also paid essential bills on GHG's behalf.

31. Upon information and belief, the Atlantic League sent a letter dated August 28, 2023 to GHG's managing member and president, Brandon Bellamy, detailing how GHG was in violation of the Atlantic League Bylaws and League Affiliation Agreement. This letter concluded with the following caution to GHG: "In summary, if [GHG] does not immediately undertake good faith efforts to cure its defaults and improve its financial and operating integrity, the Atlantic League will have little choice but to consider strategic alternatives, including revocation of [Atlantic League] Membership."

32. Upon information and belief, Mr. Bellamy also received a letter dated September 11, 2023, regarding a Notice of Default of Amended Secured Promissory Note, stating in relevant part "NC Gas House Gang LLC is in default of the Note for failure to pay principal and interest under the terms of the [Amended Secured Promissory] Note."

33. Upon information and belief, the Amended Secured Promissory Note is for the membership fee agreed to be paid to the Atlantic League by GHG. Upon information and belief, GHG is in arrears $1.1 million of the original $2.45 million Note.

34. Upon information and belief, on November 13, 2023, the Atlantic League terminated GHG's membership.

35. GHG could never have and did not in-fact cure the Atlantic League's termination of their membership.

36. In the event of a Team Default, UOA § 11.5 provides that "in addition to its other remedies at law or in equity," the City has the right to issue a "notice… of the [City's] intention to terminate this Agreement… [and] terminate the [Defendant] Team's right of possession of the Premises….". (Ex. 1, pp. 52-53.)

37.     Further, "after the expiration of a period of ninety (90) days from the date such Final Notice is delivered unless the Event of Default is cured, and upon expiration of such ninety (90) day period, if the Event of Default is not cured, this Agreement shall terminate and/or [GHG's] possessory interest shall terminate, as applicable, without liability to the [City]."

38.     On November 15, 2023, the City, by and through undersigned counsel, issued via certified mail return receipt requested, the Final Notice contemplated by UOA § 11.5.  A true and accurate copy of the Final Notice is attached hereto as **Exhibit 2**.

39.     Accordingly, no later than ninety days thereafter-- February 13, 2024-- the Agreements automatically terminated.

40.     Given GHG's failures to meet its financial commitments, inconsistent cashflow, failure to maintain the Stadium, and the unavailability of any Sanctioning Association other than the Atlantic League, GHG could never have cured its Team Default.

41.     A Team Default under the UOA is an "Event of Default" under the EUALA.  An Event of Default under the EUALA provides the City with the remedy of "institu[ing] any and all proceedings or claims permitted by law or equity to recover all unpaid sums and amounts then due and payable by [Defendant] Team under this Lease, and any and all amounts necessary to compensate City for all the damage proximately caused by Team's failure to perform its obligations under this Lease;  and/or…" preliminary and permanent injunctive relief "or other equitable relief…to compel Team to comply with or refrain or cease from breaching or violating the terms, covenants, and conditions of this Lease."  *See*, EUALA § 14(b). (Ex. 1, p. 8.)

42.     The City seeks a declaratory judgment that the Team Default was incurable and in addition or in the alternative, the Agreements terminated no later than February 13, 2024.

## <u>*Commencement of this Action and the Bankruptcy Proceedings*</u>

43.     After issuing the Final Notice on November 15, the City promptly commenced this action on November 17, 2023, to secure its asset-- the Stadium-- seeking in part preliminary injunctive relief given that GHG could not have cured its terminated membership in the Atlantic League.

44.     On November 28, 2023, the City served its Notice of Hearing on its Motion for Preliminary Injunction on GHG for December 6, 2023, in the Gaston County Superior Court.

45.     On December 1, 2023, GHG initiated bankruptcy proceedings in the U.S. Bankruptcy Court for the District of Maryland, captioned *In re Gas House Gang, LLC*, Case No. 23-18766 ("Bankruptcy Action"). As a result of the automatic stay imposed by the U.S. Bankruptcy Code, the City's motion hearing could not proceed in Gaston County as scheduled.

46.     On December 7, 2023, the City filed an "Emergency Motion… for An Order (I) Compelling the Immediate Rejection of Executory Agreements or, (II) In the Alternative, Modifying the Automatic Stay to Allow the City to Exercise Its State Law Rights and Remedies" (Doc. 6-3, a true and accurate copy of which is referred to and incorporated as if fully set forth herein.)

47.     After full briefing and an in-person evidentiary hearing on December 14, 2023, the Bankruptcy Court rendered its decision in open court on December 19, 2023, making a series of findings of fact and conclusions of law uniformly in the City's favor.

48.     Among its findings and conclusions, the Court concluded from the bench that GHG was in default under the Agreements:

> The City presented convincing evidence and convincing testimony that Debtor is in serious default of its obligations under the Lease and Use Agreement… Debtor's lack of proper maintenance on the Property and the current disrepair of its facilities exposes the City to the near certainty of serious harm.

(Doc. 6-6, p. 14) (a true and accurate transcript of the Court's oral ruling from December 19, 2023, and is referred to and incorporated as if fully set forth herein).

49.     The Court followed this ruling by entry of an Order in the late afternoon hours of December 21, 2023, granting the City immediate relief from the automatic stay, freeing it to pursue its state law remedies. (Doc. 6-7, a true and accurate copy of which is referred to and incorporated as if fully set forth herein). To be precise, the Court ordered, with immediate effect:

> **ORDERED,** that the City is granted relief from the automatic stay to pursue its state-law rights and remedies with respect to the Exclusive Use Area Lease Agreement, the Use and Operating Agreement, and the real property and improvements, including the multi-use sports and entertainment facility, located at 800 W. Franklin Blvd., Gastonia, North Carolina 28052.

(Id., p. 2.)

50.     Later that night, after the Court entered its Order in the Bankruptcy Action, Gas House Gang noticed removal of the City's lawsuit to this Honorable Court. (Doc. 1.)

51.     In the course of the Bankruptcy Action, GHG-- through its sole manager member and its attorney-- have made multiple admissions which conclusively establish that the City is entitled to the relief sought herein.

52.     GHG admitted in the Bankruptcy Action that the Atlantic League's termination constituted a default under the Agreements with the City:

> While [GHG] believes that the Atlantic League acted improperly… in terminating [GHG's] membership… [GHG] may cure any default engendered by such termination by substituting a different Sanction[ing] Association.  [GHG] should therefore be afforded a reasonable time to either (a) obtain reinstatement in the Atlantic League or (b) become a member of a different Sanctioning Association.

(Doc. 6-4, p. 3 at ¶ 2, a copy of which is referred to and incorporated as if fully set forth herein.)

53.     Likewise, during the evidentiary hearing on December 14, 2023, counsel of record for GHG in the Bankruptcy Action admitted to the Court:

Your Honor, we're here -- we're dealing with a contract. And that makes it fairly simple and straightforward. It's the exclusive use and operational agreements…

**And, Your Honor, we're really not going to dispute that there are defaults under this contract. There are. It's obvious.** There is-- there is certainly an insurance default. And there is arguably a maintenance default, although we have at least one witness who will testify that the City's complaints don't tell the whole picture, and that the stadium is really in great shape.

**Of course, there are financial defaults.** I mean, we're in bankruptcy. There's always financial defaults.

**And then the issue of the League termination.** We have filed a motion to assume that arrangement…

**…And there's no question that the League was acting to collect money owed to it.** And I'm not here to argue the preference case…

…So these are all defaults that can be cured within the 90 days. Ninety days runs February 13 [2024]…

…So the City knows that if the team gets unbranded, it would have to find somebody else…

…The maintenance issues, I read through the exhibits, they talked about the stadium needs a cleaning. Okay, the stadium needs a cleaning. We can get a cleaning service out there…

…**I mean, I'm not saying that that's not a legitimate concern by the City**, it is a legitimate concern…

…The next issue is well, all right, so there's this vote on November 13 that is to terminate the membership…

So, Your Honor, this is really an easy case. **I get why the City is concerned. The City has a right to be concerned, there are defaults**…

…We're not looking to hold up the City indefinitely. We're not looking to damage the City…

(Doc. 6-5, pp. 12-17, which is referred to and incorporated as if fully set forth herein.) (Emphases added.)

54. In other words, counsel for GHG made judicial admissions, including: (i) GHG had

defaulted on its Agreements with the City; (ii) there were financial defaults by GHG; (iii) the

Atlantic League terminated the membership due to the money owed to it by GHG; and (iv) the 90 days from the Final Notice expired on February 13, 2024.

55.     Under North Carolina law, bankruptcy termination clauses on unexpired leases are enforceable.

56.     Thus, after being relieved from the automatic stay to pursue state law remedies, on January 8, 2024, the City sent GHG, by and through respective counsels, a letter entitled "Automatic Termination by 'Act of Bankruptcy' of the Exclusive Use Area Lease Agreement and Use & Operating Agreement." (Doc. 6-2, a true and accurate copy which is referred to and incorporated as if fully set forth herein.)

57.     On February 12, 2024, the Court in the Bankruptcy Action held an evidentiary hearing on a series of motions in which GHG's managing member, Mr. Bellamy testified.  A true and accurate copy of the transcript from that evidentiary hearing was attached to the City's Reply Brief in Support of its Motion for Judgment on the Pleadings as Exhibit 1 at Docket Entry 23-1, and is hereby referred to and incorporated as if fully set forth herein.

58.     In the February 12, 2024 hearing in the Bankruptcy Action, it was disclosed by Mr. Bellamy in direct examination by the U.S. Trustee that he, acting on behalf of GHG, had backdated an agreement with another entity of which he was the managing member, Momentous Group LLC, such to reflect that it was dated January 3, 2023, when in reality the agreement was entered into in violation of the U.S. Bankruptcy Code post-petition in January 2024. (Doc. 23-1, pp. 39-50).

59.     Upon information and belief, this was an effort to retroactively authorize Momentous Group to place insurance for GHG such that GHG could attempt to procure insurance as an additional insured under Momentous Group. As a result of this irregularity, the hearing was continued by the Court.

60. Various other hearings have taken place in the Bankruptcy Action since that time.

61. GHG has filed five Chapter 11 Subchapter V Plans with the Court in the Bankruptcy Action-- four have been denied by the Court and one is currently pending.

62. An evidentiary confirmation hearing was held on August 26, 2024 regarding GHG's Third Amended Chapter 11 Subchapter V Plan.

63. On August 30, 2024, the Court in the Bankruptcy Action issued an oral ruling denying confirmation of the Third Amended Chapter 11 Subchapter V Plan, specifically finding:

> On May 28, [GHG] filed the third amended plan. June 28 was the 210th day since the petition date. [GHG] has taken no action to seek consideration of its motion to assume since that date. As such, it appears that [GHG's] lease with the City has been deemed rejected by operation 365(d)(4).
>
> As to the League, it argues that its agreements with [GHG] were terminated, and as such, there is no executory contract for [GHG] to assume or reject.
>
> Upon the Court's review of the docket in this case, including [GHG's] denial -- including the Court's denial of [GHG's] motion to assume its agreements with the League, as well as the complaint and other documents filed in the adversary proceeding, the Court notes that it does appear that [GHG] does not dispute that the League has terminated its agreements with [GHG].
>
> In any regard, Section 365(d) does not allow a 11 Chapter 11 debtor to indefinitely delay its decision on whether to assume or reject an executory contract or unexpired lease as provided for in the third amended plan. As such, the third amended plan fails to satisfy Section 1129(a)(1), and confirmation must be denied.

64. A true and accurate copy of the Transcript of Oral Ruling by the Court in the Bankruptcy Action from August 30, 2024 is attached hereto as **Exhibit 3** and the referenced quotation is located at pp. 17-18.

65. In its pending plan filed on September 13, 2024, the Fourth Amended Chapter 11 Subchapter V Plan, GHG deem the Agreements rejected. A true and accurate copy of the Fourth Amended Chapter 11 Subchapter V Plan is attached hereto as **Exhibit 4** and the referenced rejection is located on p. 18.

*GHG's Pattern of Financial Breaches*

66.     Prior to the Bankruptcy Action, and in addition to failing to pay its membership fee with the Atlantic League, its failure to pay its own baseball players through the end of the 2023 season, and its ultimate termination from the Atlantic League, GHG had a history of violating the UOA in other ways, particularly as it pertains to financial obligations thereunder and maintenance of the Stadium.  This troubled history heightened the irreparable harm to the City caused by the GHG's uncurable membership termination from the Atlantic League and is indicative of an organization in financial crisis far before said termination.

67.     UOA § 4.3 (Ex. 1, pp. 28-29) requires an annual payment to the City for Naming Rights.  Payment for the Naming Rights was due for the previous season on October 31, 2022, and was only finally paid on August 3, 2023.

68.     As of the date of the commencement of this action, again, the Team had defaulted on its Naming Rights obligation and is, to-date, currently delinquent.  This failure to honor this obligation further indicates that the Team has no intent in honoring its obligations.  Failure to timely pay the Naming Rights' fee or any other monetary obligations under the Agreements constitutes a Team Default under the UOA.

69.     The City put GHG on notice of this through the Final Notice sent to it in Exhibit 2 to this Complaint.

70.     Before the Team's 2023 regular season began and continuing well into the season, the Team was in arrears in making its Initial Term Rental payment under the EUALA.  Like the aforementioned delinquent Naming Rights payment, the $35,808 due for the Initial Term payment was also paid on August 3, 2023.  The lease payment was nearly six months in arrears when finally paid.

71.    Under UOA § 7.27, GHG was required to "arrange for and pay or cause to be paid when due all charges for telephone, internet and gas (if any) for the Stadium." (Ex. 1, pp. 46-47.)

72.    Upon information and belief, GHG failed to pay when due for the utilities for which it was responsible.

73.    For example, in August 2023, upon information and belief, there was a gas service interruption at the Stadium due to the GHG's failure to make payment.

74.    The emergency generator at the Stadium malfunctioned as a direct result, upon information and belief, of the gas supply being shut-off.

75.    The City incurred costs for a repair and diagnostic service call related to the emergency generator.

76.    To date, none of GHG's financial defaults have been cured and, upon information and belief, GHG has no plan to cure these financial defaults.

### GHG's Pattern of Stadium Maintenance Failures

77.    In UOA § 6.1.4, the Team is obligated to "maintain the Stadium in accordance with Comparable Facilities subject to normal wear and tear…". (Ex. 1, p. 35.)

78.    More specifically, in UOA § 7.1, the "Team shall, at its sole cost and expense, perform all Operational Maintenance required to keep, maintain, and operate Premises, including the interior and exterior, structural… and nonstructural portions of the improvements, in as good repair as exists on the Commencement Date… and generally consistent with the operation and maintenance practices of… Comparable Facilities, subject to ordinary wear and tear…".  (Ex. 1, p. 37.)

79.    The UOA goes on to define "Operational Maintenance" broadly so as to emphasize that the maintenance of the premises is the responsibility of the Team.

80.     Finally, in UOA § 7.8, the "Team agree[d] to operate and maintain the Premises throughout the Term in a condition necessary to conduct the permitted uses… with the general quality of operations at Comparable Facilities." (Ex. 1, p. 41.)

81.     Operational Maintenance at the Stadium is an "absolute and unconditional" obligation of GHG under UOA.

82.     The Team has regularly failed to meet its maintenance obligations. Indeed, as the result of its annual facility and operational assessment of the premises earlier this year, the City noted that "the current lack of regular/routine maintenance is already shortening said life expectancy of the Facility and its amenities and equipment" and that "[t]he entire facility is in desperate need of a major cleaning, as well as regular, on-going cleaning throughout the calendar year."

83.     The City inspection earlier this year noted that the upkeep of the restroom facilities as "extremely poor," including the "toilets urinals, sink, walls, stall, and other fixtures," as well as there being a failure to clean the windows.

84.     This is not a cosmetic criticism, but rather a troubling pattern of improper maintenance which will diminish the life expectancy and value of the premises.

85.     For example, prior to that inspection, in a memorandum to Team officials on September 12, 2022, the City specifically noted that "the majority of the [50%] rise in… utility costs is related to toilet fixtures left 'running'," and calling on the Team to inspect restroom fixtures daily to ensure "proper operation of these facilities…".

86.     The City inspection also revealed maintenance issues in, for example, "the kitchen cooking equipment, concourse concrete, concession equipment, keg and reach-in coolers… storage rooms, premium level bar area, windows and doors, elevator, and the seating bowl," with

"[t]he most egregious area" being "the kitchen/cooking equipment" with the concern again being life expectancy of this equipment.

87.     Further, there were "[w]eeds… growing through the Facility's concrete/hard surfaces and around the turf perimeter." Repairs were also noted as being needed behind the first base dugout and "excessive trash" was noted to have "accumulated behind the ADA lifts in both dugouts."

88.     There was also an unattended leak in the First Aid Room where mold was discovered. Mold remediation on the premises would be a costly consequence for GHG where simple maintenance could prevent these issues from arising to begin with.

89.     In sum, virtually every public-facing or public-use component of the premises was in woeful condition after what appeared to have been months of maintenance neglect in the offseason between the 2023 and 2024 seasons, to say nothing of ongoing issues arising during the season.

90.     Once GHG lost its membership in the Atlantic League, a Promissory Note has been declared in default, the City had sent its Final Notice, and GHG declared bankruptcy, GHG had even less incentive and, apparently, no means by which to meet its "absolute and unconditional" obligation to properly maintain the Stadium.

91.     In its hearing on December 14, 2023, the Court in the Bankruptcy Action heard testimony and admitted exhibits about the condition of the Stadium, including photographs from the City Attorney showing molding food products left on kitchen equipment for months after the conclusion of the 2023 baseball season and standing water in a restroom left uncured. (Doc. 7-4.)

92.     In its subsequent verbal ruling, the Court in the Bankruptcy Action found that "[t]he Property is currently in a state of disrepair. If these maintenance issues are left unresolved, it is a

near certainty that the City will suffer a considerable decline in the value of the property." (Doc. 6-6, p. 15.)

93.     If the City was to secure a successor lessee for the its Stadium in time for the new Atlantic League baseball season in 2024, which it ultimately did, the Stadium could not have been left in disrepair for months by the defaulted and exiting GHG.

94.     The City had to secure the Stadium and surrounding premises, terminating or suspending GHG's right of possession with immediate effect. Thus, the City turns to this Court for relief.

### *Failure to Maintain Insurance*

95.     The UOA also required Gas House Gang to maintain insurance on the Stadium including, *inter alia*:

> …Commercial General Liability coverage including bodily injury, personal injury, property damage, and contractual liability in combined single limit of One Million Dollars ($1,000,000) per occurrence and Five Million Dollars ($5,000,000) aggregate… umbrella excess liability with limits of at least Ten Million Dollars ($10,000,000) per occurrence and in the aggregate; and workers compensation coverage to protect Team's permanent and temporary employees…

(Ex. 1, p. 68 at § 8.1)

96.     Unknown to the City when it sent its Final Notice on November 15, 2023, and when commenced this action on November 17, 2023, GHG's insurance on the Stadium was terminated for nonpayment at the end of October 2023. (Doc. 6-5, p. 123, pp. 127-130.)

97.     This serious breach was only learned through the Bankruptcy Action at the hearing on December 14, 2023, when GHG's witness and former chief marketing officer, Veronica Jeon, revealed during her testimony that the insurance had been terminated.

98.     Not only is the failure to maintain its insurance on the Stadium a material breach of

the Agreements, but the failure to notify the City of the same was itself yet another breach of the

UOA:

> [GHG] shall promptly notify City in writing if [GHG] becomes aware of any of the
> following… any violation or alleged violation of applicable Governmental Rules
> *or insurance requirements*…

(Ex. 1, p. 63 at § 7.13, 7.13.5.) (Emphasis added.)

99.     The purpose of this provision is clear. The City owns the Stadium. The City

contracted with GHG to procure and maintain insurance on the Stadium. If GHG could not

maintain said insurance on the Stadium, the City had a right to know so it could take steps to

protect its asset.

100.    In its ruling on December 19, 2023, the Court in the Bankruptcy Action made

findings related to the lapse in insurance and GHG's inability to secure appropriate insurance even

in the face of the Court's order:

> In October of 2023, [GHG] general liability and umbrella insurance policies were
> terminated due to nonpayment.  [Gas House Gang] did not notify the City of this
> lapse in insurance, and it wasn't until the hearing last week that the City learned
> that [Gas House Gang] had no insurance coverage since October…
>
> …On December 8, 2023, [GHG] procured a short-term general liability insurance
> policy that provided coverage only through December 12, 2023.
>
> Further, the policy fell well short of the requirements under the Use Agreement for
> several reasons, including that it did not include umbrella coverage or workers'
> compensation coverage…
>
> …On December 12, 2023, [GHG] obtained another short-term general liability
> policy that provided coverage through January 4, 2024.  Like the previous policy,
> this policy does not satisfy the requirements of the Use Agreement, and does not
> include umbrella coverage or workers' compensation coverage, and [GHG] admits
> as much.

(Doc. 6-6, pp. 9-12.)

101.    After that ruling, GHG continued to insist that it could and had procured insurance coverage such to satisfy the requirements of the UOA.

102.    In a subsequent ruling on February 23, 2024, the Court in the Bankruptcy Action again rejected GHG's empty assertions, making several more findings relating to GHG's failure to abide by its insurance obligations:

> [In the context of the December proceedings,] Debtor's failure to obtain and maintain insurance, fulfilling its obligations to the City, was not subject to genuine dispute.

> Further, the City presented more than adequate evidence regarding the condition of the stadium to present a colorable claim for breach of the agreement and lack of adequate protection.

> On December 22, 2023, Debtor visited the stadium and took pictures of other areas of the stadium, which show that at lease some parts of the stadium are not in total disrepair.  However, even these pictures reflect Debtor's neglect of the stadium.

> (…)

> Thereafter, Debtor continued its efforts to obtain adequate insurance.

> On January 23, 2024, which is nearly two months post petition and four months since its prior policy was terminated, Debtor asserts that it obtained more robust insurance coverage, which Debtor believes fulfills its obligations to the City. Debtor has only provided to the Court and the City a copy of the Certificate of Liability Insurance.  It appears that Debtor did not possess copies of the applicable insurance policies, and has presented no evidence of the actual terms of those policies, or exclusions applicable thereto.

> Further, while the Certificate of Insurance shows that Debtor and the City are listed as additional insureds under the policies, the polices are in the name of a separate entity, Momentous Group LLC, which like the debtor, is solely, owned by Mr. Bellamy.

> As the policies were nor provided, it is unclear whether payments made under these insurance policies on behalf of Momentous Group could reduce the amount of coverage available to the debtor.

> Given the numerous questions surrounding the newly acquired insurance policies, and Debtor's inability to produce copies of the policies, Debtor has not shown that

its present insurance coverage satisfies its insurance coverage obligations to the City.

(Doc. 19-2, pp. 7-9) (a transcript of the Court's oral ruling from February 23, 2024, which is referred to and incorporated as if fully set forth herein).

103.    After GHG's insurance on the Stadium was terminated, GHG recklessly exposed the City to liability in its capacity as Stadium owner. GHG exasperated its recklessness by failing to notify the City of the insurance lapse.

## FIRST CAUSE OF ACTION
### (Breach of Contract)

104.    The allegations contained in the previous paragraphs are incorporated by reference as if fully set forth herein.

105.    The Agreements are contracts between the City and GHG.

106.    GHG has materially breached the Agreements by all of the actions described above, but in particular, having its membership terminated by the Atlantic League.

107.    GHG could not and never did cured the termination of its membership in the Atlantic League, which was a Team Default under the UOA and Event of Default under the EUALA.

108.    As the Court in the Bankruptcy found, GHG "was in serious default of its obligations under the Lease and Use Agreement. [GHG's] lack of proper maintenance on the Property and the current disrepair of its facilities exposes the City to the near certainty of serious harm."

109.    Moreover, GHG's failure to maintain its insurance on the Stadium was a breach of the UOA, as was its failure to inform the City of said termination.

110.    GHG's deceptive and reckless misconduct exposed the City to further irreparable and serious harm that the City did not know about such to remedy until after the commencement of the Bankruptcy Action.

111.    The Agreements contemplate an award of attorneys' fees and expenses to compensate the City for having to take action to enforce its rights under the Agreements and secure the Stadium.

112.    Additionally, while the City was able to place a new tenant and operator in the Stadium prior to the start of the 2024 baseball season, the City was required to expend funds to do so, including attorney's fees in negotiating with the new tenant and operator.

113.    GHG's breach of contract has caused damages to the City in an amount that exceeds $75,000.

114.    Thus, in addition to entry of judgment for money damages, the City is entitled to the declaratory and injunctive relief requested herein.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment)

115.    The allegations contained in the previous paragraphs are incorporated by reference as if fully set forth herein.

116.    An actual case or controversy exists between the parties concerning the respective rights of the parties as to the Agreements and the EDA.

117.    Accordingly, the City seeks declaratory relief contemplated by 28 U.S.C. § 2201(a).

118.    Specifically, the City seeks a declaratory judgment as to the following issues:

a.     That GHG committed a Team Default under the UOA and an Event of Default under EUALA when its membership was terminated by the Atlantic League on or around November 13, 2023;

b.     That the City had the right to issue a Final Notice as a result of the membership termination;

c.     That the City had the right to immediately terminate the Agreements and terminate GHG's right of possession as to the Stadium with immediate and permanent effect;

d.     That the Agreements were validly terminated by the City on January 8, 2024; and

e.     That, in any event, the Agreements terminated at the conclusion of the ninety-day (90) day cure period on February 13, 2024; and

f.     That GHG, by its defaults under the UOA and EUALA, frustrated the purpose of Exhibit G of the UOA-- *i.e.*, the EDA.

### THIRD CAUSE OF ACTION
### (Permanent Injunctive Relief)

119.   The allegations contained in the previous paragraphs are incorporated by reference as if fully set forth herein.

120.   The City has the contractual right to seek injunctive and equitable relief from the Court against the GHG in the event of a Team Default.

121.   The City hereby seeks permanent injunctive relief, to the extent needed at the conclusion of this action, terminating the Agreements and the GHG's right of possession pursuant to the Agreements.

**WHEREFORE,** Plaintiff City of Gastonia hereby respectfully requests a bench trial for all triable issues and orders and judgment(s) entered by this Honorable Court in its favor and against Defendant Gas House Gang, LLC:

1.      That awards damages to the City against in an amount to be determined at trial, but in excess of Seventy-Five Thousand dollars ($75,000);

2.      That grants, in whole or in part, the declaratory relief sought at ¶ 120;

3.      That enjoins Defendants by terminating the Agreements and the GHG's right of possession;

4.      That awards reasonable attorneys' fees, costs, and expenses to the City as contemplated by the Agreements for having to seek judicial intervention to enforce its rights under the Agreements and protect its asset; and

5.      Any other such relief, either in law or in equity, as this Court deems just and proper.

Respectfully submitted, this the 28th day of September, 2024.

/s/ Daniel E. Peterson
Daniel E. Peterson
NCSB#: 41521
Parker Poe Adams & Bernstein LLP
620 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone:  704.372.9000
Facsimile:  704.334.4706
danielpeterson@parkerpoe.com

L. Ashley Smith, City Attorney
NCSB# 19273
PO Box 1748
Gastonia, NC  28053-1748
Telephone:  704.866.6735
Facsimile:  704-854-6607
Ash.Smith@gastonianc.gov

*Counsel for the City of Gastonia*